Argued and submitted November 12, 1993, reversed and remanded May 25, 1994

In the Matter of the Marriage of

Alejandro G. PEDROZA,
*Petitioner,*

*and*

Maria Eva PEDROZA,
*Respondent.*

STATE OF OREGON ex rel
Maria Eva PEDROZA,
*Appellant,*

*v.*

Alejandro G. PEDROZA,
*Respondent.*

(CV 87-314; CA A77076)

875 P2d 478

Jas. Adams, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Garry L. Reynolds argued the cause for respondent. With him on the brief were Daniel J. Hill and Reynolds & Bendixsen, P.C.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

This is a proceeding to modify child support and to establish the amount of past due support owed by father. The state appeals a judgment in which the trial court reduced father's accrued child support arrearage to $0 and ordered child support that is less than the child support guidelines' presumptive amount.

In 1977, father and mother married in Washington. They had three children who, at the time of the hearing, were ages 14, 12 and 10. The parties separated in 1983 and divorced in Washington in 1987. Father moved to Oregon and remarried; he and his present wife have a seven-year-old child.

Mother, a resident of Washington, has been receiving Aid to Dependent Children since she and father separated.[1] In 1985, before the parties' marriage ended, father was ordered to pay a total of $255 per month for child support. He complied with that order. In the 1987 marital dissolution judgment, which was based on a written agreement between the parties, child support was set at 25 percent of father's gross income. Father testified that English is not his native language and that, in 1987, he did not know what "gross income" meant.

Beginning in 1987, father's child support payments have been made to the State of Oregon through payroll deductions. Notwithstanding the 25 percent provision in the dissolution decree, the Oregon Department of Human Resources Adult and Family Services Division's Child Support Program sent monthly statements to father's employer, erroneously showing that his obligation was still $255 per month.[2] Father testified that he knew otherwise, however. At one point, Washington sent father a refund check, suggesting that he had paid more than he owed. On another occasion, Oregon sent him a refund check. In May, 1988, the State of Oregon informed father's

---

[1] Mother's right to child support payments has been assigned to the State of Washington, on whose behalf the State of Oregon appears. *See* ORS 416.410(1); *State ex rel Hansen v. McKay*, 31 Or App 631, 637, 571 P2d 166 (1977).

[2] It appears that that error was the result of father's first attorney having sent to the Oregon Support Enforcement Division (SED) a copy of the parties' original "petition for dissolution," in which father agreed to pay $255. That petition was not the basis of the dissolution judgment, however. The judgment was based on a subsequent stipulated agreement. SED apparently assumed, but did not verify, that the parties' petition had been incorporated into the final dissolution judgment.

employer that father's account had been overpaid and directed the employer to temporarily suspend withholding wages. In August, 1990, the state informed father that he was $37 in arrears. In April, 1991, the state learned that the parties' dissolution judgment had set child support at 25 percent of father's gross income. Thereafter, father's arrearage was adjusted upward to $19,364 and his employer was directed to withhold 25 percent of father's gross monthly pay.

On December 2, 1991, father filed a motion to modify the dissolution judgment. He sought to delete the 25 percent provision and to reduce his child support obligation to $133 per child, per month. He also sought an order establishing that he is not in arrears. The state sought an increase in father's child support payments and requested that the court establish the amount of unpaid support that had accrued under the dissolution judgment's 25 percent provision.

The evidence presented at the hearing shows that mother's monthly gross income is $935. Father's gross income is approximately $3,050 per month. His present wife usually earns $1,450 per month, but at the time of the hearing, she had been temporarily laid off. According to father's uniform support affidavit, his monthly expenses include a $369 car payment, ten minimum credit card payments that total $616, and an optional retirement fund deduction of $340. At the time of the hearing, he was paying approximately $500 per month for child support.

It is undisputed that, under the child support guidelines, ORS 25.270 to ORS 25.285; OAR 137-50-320 to OAR 137-50-490, father's total monthly support obligation for the three children is $761.[3] In an effort to rebut the presumption that $761 is the correct amount, OAR 137-50-330(2)(a), father testified that he is unable to pay that amount because of a $14,000 credit card debt that was a result of having left his household furnishings with mother when their marriage ended, and having needed to purchase furnishings and all of the "basic necessities" for the house that he now shares with his wife. Also, he presented evidence that he had attempted to refinance his house and consolidate his loans, but his application had been denied.

---

[3] Under the guidelines, father receives a $226 monthly credit for his fourth child.

The trial court reduced father's child support arrearage to $0, on equitable grounds. It noted that father had been faced with language difficulties and conflicting support orders, and that he had relied on assurances from Oregon and Washington agencies that he was not in arrears. As for his future child support obligation, the court found that father was "not able to pay" more than $133 monthly for each of his children, and imposed a total monthly obligation of $399. The state assigns error to both rulings.

■       A court has authority to consider, as a part of a modification proceeding, a motion to alter support arrearages that have accrued under a dissolution decree. *See, e.g.*, ORS 107.135(8). However, the circumstances under which such a motion may be granted are narrow. Under ORS 107.135(6), a decree of dissolution of marriage is

> "*a final judgment as to any installment or payment of money which has accrued up to the time either party makes a motion to set aside, alter or modify the decree, and the court does not have the power to set aside, alter or modify such decree, or any portion thereof, which provides for any payment of money,* either for minor children or the support of a party, *which has accrued prior to the filing of such motion.* However, the court may allow a credit against child support arrearages for periods of time, excluding reasonable visitation unless otherwise provided by order or decree, during which the obligated parent has physical custody of the child with the knowledge and consent of the custodial parent." (Emphasis supplied.)

In short, the parties' dissolution decree is a final judgment as to the child support that was due and unpaid before father filed his motion to modify.

■       The Oregon appellate courts have repeatedly held that, under ORS 107.135(6) and its predecessors, "installments of child support that have accrued before a motion to modify is made become final judgments and are beyond the power of the court to modify." *Sheldon and Sheldon*, 82 Or App 621, 623, 728 P2d 946 (1986), *rev den* 302 Or 615 (1987); *see also Cope and Cope*, 291 Or 412, 415, 631 P2d 781 (1981); *Seever and Seever*, 124 Or App 54, 58, 861 P2d 1038 (1993); *Edwards and Edwards*, 73 Or App 272, 280, 698 P2d 542 (1985); *Jacot v. Jacot*, 37 Or App 803, 808, 588 P2d 122 (1978), *rev den* 286 Or 745 (1979). Further, "the law in Oregon is clear that a court

may not order accrued support satisfied on either equitable or estoppel grounds." *Sheldon and Sheldon, supra*, 82 Or App at 624; *see also Eagen and Eagen*, 292 Or 492, 494-97, 640 P2d 1019 (1982); *Bryant and Bryant*, 70 Or App 443, 447, 689 P2d 1025 (1984). Accordingly, the trial court was without authority to modify or set aside father's accrued and unpaid child support.

A precise determination of the past due amount that father owes depends on the date on which the dissolution judgment is modified. The earlier it is modified, the smaller the arrearage. Although "an original judgment for support cannot be modified for the period *between* the time of the entry of that judgment and the time of a motion for modification," *Starzinger v. Starzinger*, 82 Or App 96, 99, 727 P2d 168 (1986) (emphasis supplied), modification of a support order can be made retroactive to the date of the filing of the motion to modify. *Warren and Warren*, 31 Or App 213, 219, 570 P2d 104 (1977); ORS 107.135(6). Given the facts of this case, we hold that the filing date of father's motion is the appropriate date from which the dissolution judgment should be modified. Because the record does not contain all of the necessary information, we remand for the trial court to calculate father's arrearage based on the following formula:

(A) Determine father's total gross earnings from the date of the dissolution judgment (August 24, 1987) until the date on which the motion for modification was filed (December 2, 1991).

(B) Multiply that sum by .25 to determine the amount that was owed under the dissolution decree's 25 percent provision.

(C) Calculate the amount of child support that was actually paid by father during that same period. Include any intercepted tax refunds that were directly applied by the state to father's balance.

(D) Subtract the amount that was paid from the amount that was owed. That is father's arrearage.

We next consider whether the trial court erred in setting father's child support obligation at $399 per month, which was a substantial downward adjustment from the child support guidelines' presumptive amount of $761. The trial

court's decision in that regard is jeopardized by the fact that it failed to make the requisite rebuttal findings showing how the application of the guidelines formula "would be unjust or inappropriate" in this case. ORS 25.280; OAR 137-50-330-(2)(b). The decision is further compromised by the fact that it is not based on evidence in the record. *See Christopherson and Christopherson*, 112 Or App 166, 169, 827 P2d 950 (1992). For example, the court specifically found that father could not pay more than $399 per month, yet father testified that he is willing and able to pay $500.

On appeal, father argues that he presented sufficient evidence to rebut the presumptive obligation of $761. He points to his discretionary expenses, which he refers to as "reasonable necessities," ORS 25.280(2), his substantial consumer debt, and his inability to qualify for a loan.

Although "the amount of support required of the obligated parent must not exceed the ability to pay and must not preclude the ability to support oneself," *Kock and Kock*, 110 Or App 497, 501, 823 P2d 442 (1992), on *de novo* review, we find that father's discretionary expenses do not fall within the category of "necessities" that would rebut his presumptive ability to pay a total of $761 per month in child support. Especially noteworthy is father's acknowledgement that he has not contacted his creditors in an effort to reduce his monthly consumer debt payments, has not attempted to refinance his car, and has not considered reducing the amount of his voluntary retirement fund payment. We hold that father has not rebutted his presumptive child support obligation. Accordingly, his monthly obligation is $761.[4]

Reversed and remanded for calculation of child support arrearage and for entry of an order modifying the child support award to $761 per month; costs to appellant.

---

[4] Father suggests that we should reduce his child support in order to leave him with sufficient funds to make payments toward his arrearage. However, such balancing at this time would be premature, because we do not know when or whether the state will take action to enforce the arrearage judgment. Child support must be determined in the light of *existing* financial circumstances. *See Woodruff and Woodruff*, 41 Or App 529, 532-34, 599 P2d 1182 (1979).