Argued and submitted September 17; resubmitted In Banc November 19, 1996, affirmed January 29, petition for review denied July 22, 1997 (325 Or 491)

In the Matter of the Marriage of

Linda Margaret MANNIX,
nka Linda Margaret Carney,
*Respondent,*

*and*

Michael Joseph MANNIX,
*Appellant,*

*and*

STATE OF OREGON,
through Marion County Support Enforcement,
*Respondent.*

(94C-33546; CA A88828)

932 P2d 70

In Banc

Clayton C. Patrick argued the cause for appellant. With him on the brief was Patrick & Meadowbrook.

Gilbert B. Feibleman argued the cause for respondent Linda Margaret Carney. With him on the brief was Feibleman & Associates P.C.

Michael C. Livingston, Assistant Attorney General, argued the cause for respondent State of Oregon. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

DEITS, J.

Edmonds, J., dissenting.

## DEITS, J.

This appeal by father involves several judgments and the proceedings regarding them that occurred in Marion County Circuit Court arising out of Jackson County support judgments.

The facts underlying the judgments are somewhat complicated. In April 1985, a judgment dissolving the marriage of the parties was entered in Jackson County. It required father to pay child support for the parties' two children of $175 per month per child. In June 1985, the Jackson County Circuit Court granted mother an additional money judgment against father for unpaid spousal and child support in the amount of $5,849. That judgment represented sums payable under a *pendente lite* order of the court that existed before the parties' marriage was dissolved. In April 1994, the State of Oregon, on behalf of mother, notified father that unless he objected to a claimed support delinquency of $33,000, that amount would be certified to the court and the Department of Human Resources and that legal process would issue for its collection. When father was served with the notice, his trial counsel requested that the dissolution case file be transferred from Jackson County to Marion County, where mother now lives. Father resides outside of Oregon. Pursuant to father's request, in May 1994, the state moved to transfer the record and files to Marion County under ORS 25.100. The Jackson County Circuit Court granted the state's motion and ordered that certified copies of the records, files and transcripts of testimony in the original proceedings be transmitted to the clerk of Marion County.

In June 1994, father filed an objection to the notice in the Marion County Circuit Court. In November 1994, mother filed a motion in Marion County to renew the Jackson County judgments pursuant to ORS 18.360. Thereafter, the Marion County Circuit Court entered an order granting mother's motion "renewing" the Jackson County judgment on November 15, 1994. Subsequently, the court held a hearing on father's objection to the notice of the delinquency. The result of that hearing was the following judgments entered May 1995:

"1)  [Mother] is awarded a judgment against [father] in the amount of $5,177.57 *representing accrued interest,* through April 5, 1995, on the prior $5,849 support arrearage judgment in Jackson County dated June 5, 1985 which was renewed on by this Court on November 15, 1994.

"2)  The Court recites [mother's] Jackson County support judgment against [father] dated June 5, 1985, in the amount of $5,849.00, which is still owing and was renewed by this Court on November 15, 1994. In view of paragraph one, any additional interest on the $5,849 judgment shall begin on April 6, 1995.

"3)  [Mother] is awarded a judgment against [father] in the amount of $14,825.00 *representing unpaid child support through December 31, 1994.*

"4)  [Mother] is awarded a judgment against [father] in the amount of $7,909.00 *representing interest* on said unpaid child support described in paragraph three." (Emphasis in the original.)

Father appeals from these judgments.

Father first assigns error to the judgment in which the court awarded mother $5,177 in accrued interest on the support judgment for $5,849 entered in 1985 in Jackson County. Father argues that Marion County did not have jurisdiction to renew the Jackson County judgment and, therefore, it was improper to award a judgment for interest on that judgment. The state and mother argue that because father did not appeal in a timely manner (within 30 days after its entry in November 1994) from the renewed judgment, that judgment became final and is not subject to collateral attack through an appeal from the May 1995 judgment.

Once a judgment has been entered and the time for appeal has expired, "procedural errors" are submerged in the judgment and are ordinarily beyond remedy, whereas jurisdictional defects in some situations can be a basis for future avoidance of the judgment. *Ketcham v. Selles,* 304 Or 529, 534, 748 P2d 67 (1987). Here, we hold that because father did not appeal directly from the order renewing the 1985 judgment, he can prevail on his collateral attack only if he can demonstrate that the Marion County Circuit Court lacked jurisdiction to renew the judgment in that county.

■      ORS 18.360 grants authority to the circuit or district court for the county in which the judgment originally was entered to renew a judgment. Specifically it provides, in pertinent part:

> "(1)   Whenever, after the entry of a judgment, a period of 10 years elapses, the judgment and any docketed or recorded lien thereof shall expire. However, before the expiration of 10 years the circuit or district court for the county in which the judgment originally was entered, on motion, may renew the judgment and cause a notation in the register and the judgment docket indicating the renewal of the judgment to be made."

Marion County was not the county in which the $5,177 judgment was originally entered. Nonetheless, the Jackson County court file containing the judgments was transferred to Marion County pursuant to ORS 25.100 and ORS 25.110. The question is whether those statutes gave the Marion County Circuit Court subject matter jurisdiction over the support obligations imposed by the Jackson County court.

ORS 25.100(1)(a) provides:

> "With respect to any order or decree entered or docketed * * * the court may, upon motion of the party entitled to such support payments, order that certified copies of the files, records and prepared transcripts of testimony in the original proceeding be transmitted to the clerk of the circuit court of the county in which the moving party or the defaulting party resides or in which property of the defaulting party is located[.]"

ORS 25.110(1) provides:

> "Upon receipt of such certified copies referred to in ORS 25.100, the circuit court of the county to which such certified copies have been transmitted *shall have jurisdiction* to compel compliance with such order or decree the same as if it were the court which made and entered the original order or decree for the payment of support. The only court having jurisdiction to modify any provision of the original order or decree is the court having original jurisdiction of the cause in which such order or decree was entered or the circuit court of the county in which either party resides if that court has received the certified copies referred to in ORS 25.100." (Emphasis supplied.)

ORS 25.110(1) is clear on its face. It grants "jurisdiction" to the transferee court to enforce and modify support obligations to the same extent that jurisdiction had vested in the transferor court. Renewal of a judgment is an aspect of the authority to enforce the judgment that the Jackson County Circuit Court had. When the transfer pursuant to the statute occurred, the Marion County court acquired the same authority. Thus, father is incorrect when he asserts that the Marion County Circuit Court lacked "jurisdiction" in November 1994. Consequently, his attack on the November 1994 judgment by appealing from the May 1995 judgment fails.

■ Father's second argument under the first assignment of error and his second assignment of error is that the trial court erred in entering judgments for accrued interest on the 1985 Jackson County judgments.[1] According to father, the judgments require father to pay "interest on interest," which is contrary to ORS 82.010(2)(b) that provides that interest on a judgment is "simple interest, unless otherwise provided by contract." Father asserts that because compound interest on judgments is barred by statute, it was error for the trial court to enter new judgments for the accrued interest.

The state and mother respond that the issue was decided adversely to father in *Ramberg and Ramberg,* 123 Or App 281, 859 P2d 571 (1993). They are correct. In *Ramberg,* we were presented with the same issue that father now raises. In that case, the original dissolution judgment awarded custody to the mother and required the father to pay child support in the amount of $150 per month. Under ORS 107.135(6), each monthly obligation becomes a separate judgment on which interest accrues if not paid. The trial court in *Ramberg* found that the father owed the mother support arrearages and that interest had accrued on the arrearages. The court entered a judgment that included the arrearages on the support obligation and the accrued interest. Once entered, interest accrued on *that* judgment at the rate of nine

---

[1] The first and second assignments of error are to the Marion County judgments in the amounts of $5,177 and $7,909. Father does not assign error to the judgment of $14,825 in those assignments of error. In his third assignment of error regarding the judgment of $14,825, he does not make the argument made in the first two assignments of error.

percent per annum. The father argued that the court's award amounted to compound interest because the child support payments that were past due were final judgments under ORS 107.135(6) and interest had already accrued on them under ORS 82.010(2). We disagreed, holding that the judgment awarding accrued interest was "independent" of the underlying support judgment under ORS 82.010(2)(c) and that mother was entitled to a lump sum judgment for accrued child support and interest. *Id.* at 287.

■       We are not persuaded that our decision in *Ramberg* ought to be overruled, particularly in view of the principle of *stare decisis*. As we have stated in numerous decisions, while there are circumstances in which we do and should overrule earlier decisions, we exercise that prerogative cautiously. Our decision in *O'Brien v. State of Oregon*, 104 Or App 1, 5-6, 799 P2d 171 (1991), *rev dismissed* 312 Or 672 (1992), includes a helpful discussion of how we approach such questions:

> "The dissent interprets the 'notwithstanding' clause differently and suggests that *Lawson* should be overruled. However, the dissent shows, at most, that there is a second tenable way in which the statute can be interpreted, not that the interpretation in *Lawson* is untenable or incorrect. It is unwise to overrule as recent a case as *Lawson* and to arrive at the opposite answer to the same question, simply because, in the abstract, either answer might be logically supportable if we were writing on a clean slate. The slate is not clean, and the dissent offers no compelling reason to wipe it clean. *Lawson* is controlling."

Father's argument is not untenable. It does offer a second logical way of resolving this question as presented. However, as in *O'Brien*, we are not writing on a clean slate, and there does not appear to be a compelling reason here to wipe it clean. Unquestionably, numerous courts and parties have relied on our decision in *Ramberg* in calculating interest on unpaid child support obligations and in entering judgments on unpaid support. Further, we continue to believe that our analysis in *Ramberg* is correct.

As we explained in *Ramberg*, the plain language of ORS 82.010(2)(c) provides that interest on a judgment for the payment of money that includes *accrued interest* will accrue

on the entire amount of the judgment. That subsection provides in pertinent part:

> "(2)   Except as provided in this subsection, the rate of interest on judgments for the payment of money is nine percent per annum.
>
> "* * * * *
>
> "(c)   Interest accruing from the date of the entry of a judgment shall also accrue on interest *that accrued before the date of entry of a judgment*." (Emphasis supplied.)

We continue to be persuaded that the above provision provides authority for the court's action here.

Father's argument for disregarding the plain language of ORS 82.010(2)(c) is that when this provision is read together with ORS 82.010(2)(b), it cannot be read to mean what it says. ORS 82.010(2)(b) provides that interest on a judgment must be simple interest unless otherwise provided by contract. Father contends that the requirement of subsection (b) compels us to read into subsection (c) the condition that it only applies when the accrued interest is not based on a prior judgment. We disagree.

In construing a statute, at the first level of analysis, we are to consider the context of a statute, which includes other provisions of the same statute, as well as the text of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). However, after considering the language of ORS 82.010(2)(b), we are not persuaded that father's reading of the statute is compelled. As noted above, the plain language of ORS 82.010(2)(c) specifically provides that a judgment may include interest accrued before the date of entry of the judgment. There is nothing in that subsection that limits its application when the interest accrued was interest on an unpaid monthly child support obligation that has become a judgment under ORS 107.135(6). It is a general maxim of statutory construction that we are not to "insert what has been omitted, or to omit what has been inserted" in a statute. ORS 174.010.

Contrary to father's assertion, we do not believe that the context of ORS 82.010(2)(c), in particular the language of ORS 82.010(2)(b), compels us to read that limitation into the

statute. Subsection (b) does provide that interest on a judgment under this subsection must be simple interest. Admittedly, in the unique context of unpaid child support payments that automatically become separate judgments under ORS 107.135(6) when the amount due is not paid, the *effect* of entering a judgment consolidating the different amounts of interest due on each unpaid judgment is that the obligor does end up paying compound interest. However, this result does not violate the prohibition on compound interest of subsection (b) because the interest to run on the judgment entered under ORS 82.010(2) is simple interest. We conclude that ORS 82.010(2)(c) did provide the trial court with the authority to enter the judgments in this case. There appears to be no compelling reason to wipe the slate clean and change the rules of the game at this time. We conclude that the trial court did not err in entering judgments based on the accrued interest.

■ We next address father's third assignment of error, in which he argues that the trial court erred in failing to give him proper credit for payments that he made directly to one of the parties' children while the child was in college. Father claims that there was an oral agreement in which he and mother agreed that he could pay child support directly to the child. Mother and father both testified at the hearing, and mother said that she never entered into such an agreement. The trial court believed mother. After reviewing the record *de novo*, we agree with the trial court's conclusion. The judgment of dissolution required father to pay the child support to mother through the clerk of the court. As the proponent of the assertion that there was an oral agreement modifying that provision, father has the burden of persuasion. In our assessment, the evidence is in equipoise in that regard.

Affirmed. Costs to mother.

**EDMONDS, J.,** dissenting.

Under the majority's decision in this child support case, father is required to pay compound interest on unpaid support judgments. What started out as two judgments in one county has now turned into five judgments in two counties, all of which reflect two principal obligations and the interest that has accrued on them. It is conceivable that

mother could seek writs of execution on all five judgments and recover interest on all five judgments. *See* ORS 23.030 *et seq* (enforcement of judgments). That result is contrary to Oregon law for several reasons as explained below and, therefore, I dissent.

In April 1985, a judgment was entered in Jackson County against father for child support for the parties' two children in the amount of $175 per month per child. In June 1985, a different judgment for $5,849 was entered in Jackson County against father for unpaid *pendente lite* spousal and child support. Under ORS 82.010(2), interest on the unpaid portions of the judgments accrued at the rate of nine percent per annum. As to the April child support judgment, interest accrued on each monthly obligation as it became due and remained unpaid.

In May 1995, the trial court undertook to affix the amounts owing under the Jackson County judgments by entering new judgments in Marion County. As to the April 1985 child support judgment, it entered judgment for $14,825 representing the principal amounts of unpaid child support owed through December 31, 1994. It also entered judgment for $7,909, representing accrued interest on all unpaid child support from April 1985 through December 31, 1994. The court also entered a judgment for $5,177.57 representing interest through April 5, 1995, on the prior $5,849 support arrearage judgment dated June 5, 1985. It is those judgments that constitute error.

Because there are three separate judgments on appeal, I will first discuss the judgment representing accrued interest on the June 1985 *pendente lite* support judgment. There is absolutely no statutory authority that grants the trial court authority to enter a judgment on accrued interest of a previously entered judgment. In June 1985, when the Jackson County court entered a judgment against father in the amount of $5,849, mother became a judgment creditor, and simple interest began to accrue under ORS 82.010(2).[1]

---

[1] ORS 82.010(2) provides in relevant part:

"Except as provided in this subsection, the rate of interest on judgments for the payment of money is nine percent per annum. The following apply as described:

When father did not pay the judgment, mother's recourse was to have a writ of execution issued to execute on the judgment and to satisfy the judgment with the proceeds of the execution. ORS 23.050. In particular, ORS 23.050(1) directs the sheriff to sell any property seized "to satisfy the judgment, with interest." Thus, Oregon law provides for the inclusion of interest whenever satisfaction of a judgment is sought. The trial court was without authority to enter another judgment that duplicates the accrual of interest on the Jackson County judgment for $5,489.

The Marion County judgment for $5,177.57 of interest that had accrued on the Jackson County judgment for $5,489 results in compound interest on the same obligation. The effect of compounding interest can translate into a large amount of money. For example, assume that the entire June 1985 *pendente lite* judgment remained unpaid until the year 2000. Interest would accrue for a 15-year period on the original judgment amount at a rate of nine percent per annum under ORS 82.010(2). Thus, father would owe $13,745 for both the principal and interest as of that date. However, because the Marion County court entered a judgment of $5,177.57 representing the accrued interest as of 1995, father also owes that amount plus five years of accrued interest on that judgment. Thus, in the year 2000, father would owe an additional amount of $7,507 because of the Marion County judgment.

The Marion County court also entered two other judgments, one representing unpaid monthly child support obligations through December 31, 1994, established by the April 1985 Jackson County judgment, and the other representing accrued interest on those obligations. The majority's analysis focuses its discussion on those two judgments without regard to the effect of its holding on the *pendente lite* judgment. Specifically, the majority reasons:

"(a) Interest on a judgment under this subsection accrues from the date of the entry of the judgment unless the judgment specifies another date.

"(b) Interest on a judgment under this subsection is simple interest, unless otherwise provided by contract.

"(c) Interest accruing from the date of the entry of a judgment shall also accrue on interest that accrued before the date of entry of a judgment."

"Admittedly, in the unique context of unpaid child support payments that automatically become separate judgments under ORS 107.135(6) when the amount due is not paid, the *effect* of entering a judgment consolidating the different amounts of interest due on each unpaid judgment is that the obligor does end up paying compound interest. However, this result does not violate the prohibition on compound interest of subsection (b) because the interest to run on the judgment entered under ORS 82.010(2) is simple interest." 146 Or App at 43-44. (Emphasis in original.)

Its analysis regarding the monthly support obligations is also faulty. It is well settled that accrued support obligations become final judgments and cannot be modified or set aside. *Pedroza and Pedroza,* 128 Or App 102, 106, 875 P2d 478 (1994). The courts' only authority under such circumstances is to calculate the amount owed by the obligor. *Id.* at 106-07. A new "judgment" is improper because the accrued unsatisfied obligations constitute "final judgments" as a matter of law, and the obligee is entitled to have a writ of execution issued based on those obligations. For instance, in *Bryant and Bryant,* 70 Or App 443, 689 P2d 1025 (1984), the wife directly obtained a writ of garnishment to enforce her judgment for accrued payments after the husband had missed five months of child support obligations. We stated:

"[ORS 107.135(3)[2]]gives the custodial parent *a final judgment* as to all accrued and unpaid installments for child support, *which may be enforced by any legal means available to execute a judgment." Id.* at 446 (emphasis supplied).

The majority's result is contrary to that established proposition of law and it fosters a practice of procuring multiple judgments arising out of the same obligations, each of which independently accrues interest, instead of one final judgment.[3]

The majority's result is driven by its reluctance to overrule our decision in *Ramberg v. Ramberg,* 123 Or App 281, 859 P2d 571 (1993), in which we rejected an identical argument made by the support obligor in that case. In

---

[2] ORS 107.135(3) has been renumbered ORS 107.135(6).

[3] The concept of duplicate judgments for the same obligations also offends the principles of *res judicata.* Once an obligation is reduced to judgment, it cannot be the subject of additional judgments.

*Ramberg,* we reasoned that the judgment awarding the obligee child support arrearages and accrued interest was "a judgment for the payment of money and, therefore, accrues interest under ORS 82.010(2) independent of the underlying obligation that it represents." 123 Or App at 287. We relied on ORS 82.010(2)(c):

> "Interest accruing from the date of the entry of a judgment shall also accrue on interest that accrued before the date of entry of a judgment."

Subsection (c) pertains to *prejudgment* interest. It has no application to interest that, like in this case, accrues *postjudgment.* Moreover, our reasoning in *Ramberg* that somehow an interest obligation is independent of the principal debt is specious, at least in the sense of a proper interpretation of ORS 82.010(2). Our task is to discern the intent of the legislature by first examining the language of the statute. The legislature has plainly told us that interest that accrues on judgments is simple interest. The legislature has made no exception for interest on judgments for accrued support. In the light of the language of the statute, the legislature could not have intended that a judgment creditor be paid more than simple interest on a judgment for support. The majority's interpretation results in a judgment creditor receiving a windfall, *i.e.,* interest on interest or compound interest, and adds language to ORS 82.010(2) that is not there.

The majority perceives our disagreement with *Ramberg* as simply another tenable way to view the statute. However, as demonstrated above, the problem cannot be laid to rest so easily. The difference between simple and compound interest involves "real" dollars. The intent of the legislature and the policy of the law are clearly contrary to the majority's position. If the majority's reasoning is carried to its logical extreme, it means that any number of judgments reflecting accrued interest could be entered arising out of the same support obligation. The majority's decision provides the impetus for support judgment creditors to enhance the amount of their judgments with periodic reductions of accumulated accrued interest to judgment, thus acquiring compound interest on the original obligation in lieu of simple interest. By judicial fiat in *Ramberg,* we erroneously opened

the door to such practices, and we ought to correct our mistake by overruling our holding in that case. Consequently, I would vacate the Marion County judgments entered in May 1995.[4]

Warren, Landau and Armstrong, JJ., join in this dissent.

---

[4] The problems created by entry of multiple judgments do not exist regarding the renewal of the June 5, 1985, judgment in Marion County because the original judgment from Jackson County was renewed, not duplicated by a new judgment.