Argued and submitted March 3, affirmed June 28, 2000

In the Matter of Farah Bertrand,
Herode Bertrand, Jean Fuzeme Enoch Bertrand,
Jemima Bertrand and Jerusalem Bertrand, Minor Children.

STATE ex rel JUVENILE DEPARTMENT OF
MULTNOMAH COUNTY,
*Respondent,*

*v.*

Ednor BERTRAND
and Wisnette Bertrand,
*Appellants.*

(9606-81768; CA A107172)

7 P3d 662

Peter Miller argued the cause and filed the brief for appellants.

Katherine H. Waldo, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Linder, Presiding Judge, and Deits, Chief Judge, and Kistler, Judge.

LINDER, P. J.

## LINDER, P. J.

Father and mother appeal from a juvenile court order terminating their parental rights to five children. Their primary contention on appeal is that the state cannot terminate their parental rights because the State Office of Services to Children and Families (SOSCF) and the juvenile court failed to comply with the refugee child statutes, ORS 418.925 through ORS 418.945. We write to address whether noncompliance with those statutes affects termination of parental rights under ORS 419B.500 through ORS 419B.524, and to identify the appropriate standard of proof in these kinds of cases. We affirm.

Father and mother are Haitian refugees who arrived in the United States in 1994. Since then, numerous public and private agencies have offered them extensive services. Despite those services, their living circumstances have not improved. Between June 1996 and February 1998, the state filed dependency petitions for each of the five children, alleging conditions that endangered their welfare. The juvenile court found all of the children to be within its jurisdiction pursuant to ORS 419B.100. The orders declared the children to be wards of the court and removed them from parents' care. Specific reasons for the juvenile court's intervention included parents' mental health problems, a history of residential and financial instability, insufficient parenting skills, the use of excessive disciplinary measures, and a failure to cooperate with SOSCF. Plans to return the children were unsuccessful because parents were unable to maintain employment or adequate housing. The three oldest children have significant special needs.

In November 1998, SOSCF filed a petition to terminate father's and mother's parental rights on several grounds, including unfitness and neglect.[1] ORS 419B.504; ORS 419B.506. At the termination hearing, parents urged the juvenile court to deny the petition, arguing that SOSCF did not comply with the requirements of the refugee child statutes. Specifically, they maintained that SOSCF did not

---

[1] The children's ages ranged from 1 to 12 at the time of the termination hearing.

follow the proper placement preferences or use a Refugee Child Welfare Advisory Committee in cooperation with refugee community resources. In response, the state argued that it complied with the statutes. The juvenile court rejected parents' argument, reasoning:

> "The court heard much about SOSCF's lack of compliance with the Refugee Child Welfare Act. While the act has some similarities to the Indian Child Welfare Act [(ICWA)] and the court has previously ruled that the proof standards are the same as ICWA[,] the statute is not a carbon copy of ICWA and should not be treated that way. The legal file is replete with judicial findings that SOSCF has complied with this act and this court concurs with those rulings."

The court also found that the state proved all of the allegations pertaining to parents, and it granted the petition to terminate.

On appeal, parents renew the argument that they made below based on the refugee child statutes, pointing to specific statutory violations. The state responds that violation of those statutes does not invalidate a termination order and that parents should have raised any challenge based on those statutes when the children were initially removed. We agree with the state.

The refugee child statutes provide that SOSCF and the juvenile court must comply with several requirements when dealing with the removal and placement of a "refugee child."[2] *See* ORS 418.925 through ORS 418.945. For example, ORS 418.927(1) provides that SOSCF shall not remove a refugee child unless "removal is necessary to prevent imminent serious emotional or physical harm to the child and the provision of preventative or remedial services do not alleviate the harm." The statutes also specify the procedures by which

---

[2] ORS 418.925 defines a "refugee child" as

"a person under 18 years of age who has entered the United States and is unwilling or unable to return to the person's country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular group or political opinion, or whose parents entered the United States within the preceding 10 years and are or were unwilling or unable to return to their country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular group or political opinion."

SOSCF and the juvenile court should effectuate a refugee child's removal and placement. *See* ORS 418.930 (requiring SOSCF to file a petition with the juvenile court detailing the circumstances which led to removal); ORS 418.933 (requiring SOSCF to include specific information in its petition and a judicial determination on removal); ORS 418.937 (requiring SOSCF and the juvenile court to consider the child's culture and tradition and follow placement preferences); ORS 418.941 (requiring SOSCF to establish a Refugee Child Welfare Advisory Committee). None of the refugee child statutes, however, purports to govern the juvenile court's jurisdiction generally or termination proceedings in particular.

The dependency chapter of the juvenile code provides that, after appropriate proceedings, the juvenile court may terminate parental rights to any child who is within the court's jurisdiction under ORS 419B.100. Typically, the state must prove that the grounds for termination exist by clear and convincing evidence, and the state must demonstrate by the same standard that termination would be in the best interests of the child. ORS 419B.500; ORS 419B.521(1). Although the sections of the juvenile code dealing with jurisdiction and termination proceedings cross-reference and require compliance with the Indian Child Welfare Act (ICWA),[3] any similar reference to the provisions regarding refugee children is noticeably absent.

The question presented in this case is analogous to one addressed in *State ex rel Juv. Dept. v. Woodruff,* 108 Or App 352, 816 P2d 623 (1991). In *Woodruff,* the father argued that, because Children's Services Division (CSD)[4] violated various provisions of the ICWA, the order terminating his parental rights was invalid. *See* 25 USC § 1901 *et seq.* This court did not decide whether CSD violated the foster care placement provision of the ICWA because, even if it did, that fact would not provide a statutory basis for invalidating a court order terminating parental rights. *Id.* at 356-57. Only

---

[3] *See generally* ORS 419B.100(6) (describing the exclusive jurisdiction of an Indian tribe in child custody proceedings); ORS 419B.500 (providing that termination of parental rights must be in compliance with the ICWA); ORS 419B.521(4) (imposing the beyond-a-reasonable-doubt standard of proof in a termination case involving an Indian child).

[4] SOSCF previously was known as CSD.

certain sections of the ICWA provide statutory bases for such a remedy, and CSD did not violate any of those provisions. *Id.* at 357-58. The court also did not decide whether CSD violated its own agency regulations because, similarly, such a violation would not provide a statutory basis to invalidate the termination. *Id.* at 358 n 5.

■■ Here, the juvenile court found that SOSCF complied with the requirements of the refugee child statutes. We need not decide whether the juvenile court was correct in that regard, however. As was true in *Woodruff*'s examination of the ICWA, neither the refugee child statutes nor the juvenile code provide that such violations are a basis to deny a termination petition or later to invalidate a termination order. Significantly, parents did not appeal from any of the orders entered between 1996 and 1998 regarding the juvenile court's exercise of jurisdiction over the five children. Parents evidently did not raise any challenge in connection with the removal or placement of the children based on noncompliance with the refugee child statutes until this termination proceeding, which came much later. As the state correctly contends, any such attack is now untimely. *See Mannix and Mannix*, 146 Or App 36, 39, 932 P2d 70, *rev den* 325 Or 491 (1997) (a final order that is not appealed may not be collaterally attacked in a later proceeding except in the case of certain jurisdictional defects).

■ Parents also challenge the juvenile court's factual findings as inadequately supported by the record. Although the juvenile court applied a beyond-a-reasonable-doubt standard of proof in making its findings, parents assert that the evidence does not rise to that level. The short answer to parents' argument is that they are wrong as to the correct standard. Unlike cases governed by the ICWA,[5] no statute imposes a higher burden of proof on the state for termination of parental rights in cases involving refugee children. The statute requires proof by clear and convincing evidence. ORS 419B.521(1). Parents do not directly challenge the sufficiency of the evidence when tested against the applicable standard. In all events, we conclude, on *de novo* review, that the record amply establishes grounds for termination under ORS

[5] *See* ORS 419B.521(4).

419B.504 (unfitness) and ORS 419B.506 (neglect) by clear and convincing evidence.

Affirmed.