No. 49          January 29, 2025          503

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of

Chantha KIM,
*Petitioner-Appellant,*
*and*

Daniel KINNERSLEY,
*Respondent-Respondent.*

Multnomah County Circuit Court
19DR02699; A180803

Susan M. Svetkey, Judge.

Argued and submitted October 29, 2024.

Elizabeth C. Savage argued the cause and filed the briefs for appellant.

Andrew Newsom argued the cause and filed the brief for respondent.

Leigh Shepley Miranda filed the brief *amicus curiae* for Oregon Trial Lawyers Association.

Before Ortega, Presiding Judge, Hellman, Judge, and Mooney, Judge.

ORTEGA, P. J.

Supplemental judgment vacated and remanded as to retroactive child support, statutory interest, and "unreimbursed medical expenses" awards; otherwise affirmed.

**ORTEGA, P. J.**

In this domestic relations case, mother appeals a supplemental judgment that modified her monthly child support obligation to father; ordered her to pay $26,274 in retroactive child support, plus $6,728.58 in statutory pre-judgment interest; and ordered her to pay father $102,536 in "unreimbursed medical expenses" for their minor child, S, which were meant to cover half of the child's private boarding school and summer camp tuition and related expenses. In her first assignment of error, mother argues that private boarding school and summer camp tuition and related expenses were not recoverable as "unreimbursed medical expenses" separate from child support and do not qualify as "medical care" as a matter of law. In her second assignment, mother argues that the trial court plainly erred in ordering retroactive child support and "unreimbursed medical expenses" that accrued prior to the date she was served with father's motion to modify.

We agree with mother's second assignment and conclude that the trial court plainly erred in ordering mother to pay for child support and "unreimbursed medical expenses" accrued prior to July 11, 2022, the date mother was served with father's motion to modify, and we exercise discretion to correct that error. That disposition obviates the need to address the bulk of mother's first assignment because all but $130 of the awarded "unreimbursed medical expenses" that mother challenges on appeal accrued before July 11, 2022. However, we accept father's concession that the child's boarding school tuition and related expenses, including the $130 expense accrued after July 11, 2022, are not "medical" expenses. We therefore vacate the supplemental judgment awards of retroactive child support, statutory interest, and "unreimbursed medical expenses," and remand for further proceedings consistent with this opinion. We otherwise affirm the supplemental judgment.

FACTS AND PROCEDURAL HISTORY

The parties are the parents of one minor child, S. Pursuant to the general judgment of custody and parenting time entered in 2008 under ORS chapter 109 (governing

unmarried parties) when S was five months old, mother had sole custody of S and father had regularly scheduled parenting time and paid monthly child support to mother. The general judgment further required father to provide medical insurance for S and to pay 50 to 100 percent of any uninsured medical costs, depending on the circumstances.

In June of 2021, when S was 13 years old, the parties stipulated to a supplemental judgment modifying custody and parenting time. They agreed that father would have sole custody and that mother would have regularly scheduled parenting time, except when S "engage[s] in a 3-week camp in Utah during the summer of 2021" during which neither parent would have parenting time. Parents further stipulated that "the issue of child support shall be resolved through [a pending administrative child support] proceeding, subject to each party's right to appeal the decision to the circuit court." Finally, parents agreed that "[f]ather shall cover the child on medical insurance, and [m]other may provide secondary insurance for the child."

In June of 2022, father filed a motion to modify child support, through counsel. Father asserted that mother had "refused to allow the Department of Justice to modify the pending child support order [in the administrative proceeding], citing that child support should not be ordered since [S] is in boarding school." Father represented that he had covered all costs associated with boarding school and that S resides with him when school is not in session. Father requested that the child support modification be "retroactive to September 1, 2020, the date [m]other was served with the [previous] motion to modify custody that lead [*sic*] to the entry of the most recent [stipulated supplemental judgment entered June of 2021]."

Mother, who was then not represented by counsel, was served with father's motion to modify on July 11, 2022. She filed a *pro se* response to father's motion in which she "agree[d] with the child support date starting September 2020." However, mother denied that she had refused to cooperate with the pending child support administrative proceeding and asserted that it was father who had refused to cooperate. Mother further asserted that, "despite

[her] previous and multiple objections," father had sent S to Wasatch Academy (Wasatch), a boarding school in rural Utah, one month after entry of the June 2021 stipulated supplemental judgment.

Mother objected to paying a share of S's boarding school costs because public school is available to S and because mother had repeatedly expressed objections to sending S to boarding school and had repeatedly told father she could not afford it. Mother also objected to S's participation in Aspiro Wilderness Program (Aspiro). Mother asserted that S had been expelled from Wasatch in the fall of 2021, that Wasatch required S to complete Aspiro before she could return to Wasatch, and that father had sent S to Aspiro over mother's objection.

Through counsel, father submitted a memorandum in support of his motion to modify. Father again asked that monthly child support be ordered retroactive to September 2020. Father additionally asked the court to deviate from the presumptive child support amount under the guidelines and to order mother to pay half of father's "ongoing out of pocket expenses" for S, including boarding school tuition and related expenses from June 2021 through August 2022: Wasatch, $152,470; Aspiro, $38,570.75; and an Aspiro-referred psychological evaluation, $4,200.

At the hearing on father's motion in December 2022, the trial court began by explaining to mother, who appeared without counsel, what to expect at the hearing and that the court understood, "from reading some of the pleadings, and your response to [father's] motion, that at least there's agreement as to the start date for child support" so "we don't have to spend any time talking about that."

Father then testified that S, who was then 15 years old, was enrolled in her sophomore year at Wasatch, a boarding school in Mount Pleasant, Utah, and began at Wasatch in the summer of 2021 when she attended a three-week summer camp there. He offered that S had had "some rough patches" during her freshman year at Wasatch and entered the eight-week Aspiro wilderness program as "an ask from *** Wasatch Academy to help with some of her impulsivity[.]"

Aspiro requires a psychological evaluation to complete the program, and S was evaluated in November 2021 while attending Aspiro. The evaluator diagnosed S with depression, anxiety, ADHD, and specific learning disabilities and "strongly recommended that [S] complete the program at Aspiro" and "transition to a structured, supportive educational boarding placement" after completing the program. The evaluator also recommended, among other things, that S pursue individual and family therapy. Father paid for all of the expenses related to Wasatch and Aspiro.

Mother testified consistently with her written response.

In closing, father's counsel again asked the court to order mother to pay monthly child support retroactive to September 2020, plus statutory interest, under the guidelines. Father's counsel asked the court to additionally order mother to reimburse him for his additional out-of-pocket costs based on S's "extraordinary" needs and cited OAR 137-050-0760(1)(o) as the source of authority for that request. For her part, mother asked the court to order her to pay half of S's medical costs subject to a reasonable cap and asserted that she could not afford to pay for S's boarding school and related costs, but that if the court did order her to pay half, she would like to receive credit for the child support she had already paid father.

The trial court granted father's motion. The court first noted mother's "stipulation to the start date of the child support amount." The court ruled that mother must pay for half of the psychological evaluation and individual therapy costs as "out-of-pocket medical expenses." The court then acknowledged case law that "says that if one parent wants a child to go to private school and the other one doesn't, then the one who doesn't want the child to go to private school doesn't have to pay the tuition." Nevertheless, relying on the psychological evaluation's recommendations, the court found that "this is a very different situation *** where a child with significant mental health, medical and emotional difficulties and diagnoses needs a certain kind of educational environment in order to meet that child's needs, in order to keep that child safe and in order to address the challenges

that she has." The court accordingly ordered mother to pay half of S's boarding school tuition and related expenses as "extraordinary out-of-pocket medical expenses":

> "THE COURT:   [A]s part of child support both parents should be paying to support [S] getting the medical care she needs, which for her means being at the private school that she's in, Wasatch, and which also means that she attended the boot camps [at Wasatch and Aspiro] *** to support her not just academically *** but to support her mental health and her psychological well-being and her medical needs."

The court acknowledged that "a tremendous amount of money" was involved, and that mother had declared significant debts in her Uniform Support Declaration, but noted that mother "may be filing for bankruptcy in which I know you get rid of a large percentage of debt that you say you have." The court also acknowledged that mother "probably did object to" father sending S to Utah but that "as a matter of law the custodial parent has the right to pick what school a child goes to."

In February 2023, the trial court entered a supplemental judgment ordering mother to pay father $26,274 in retroactive child support, plus $6,728.58 statutory pre-judgment interest, and $102,536 in "unreimbursed medical expenses," in addition to monthly child support going forward. Mother timely appeals that judgment.

We address mother's second assignment of error first, because it provides more complete relief than her first. Mother contends that the trial court plainly erred in ordering her to pay retroactive child support and "unreimbursed medical expenses" accrued prior to July 11, 2022, the date mother was served with father's motion to modify child support.[1]

To qualify for plain-error review under ORAP 5.45, an error must be (1) an error of law; (2) obvious and not reasonably in dispute; and (3) apparent on the record without requiring an appellate court to choose among competing inferences. *See, e.g.*, *State v. Vanornum*, 354 Or 614, 629,

---

[1] Although the trial court also ordered mother to pay for half of S's out-of-network therapy, we do not understand mother to challenge those expenses on appeal.

317 P3d 889 (2013) (outlining requirements of plain-error review). If an error is plain, we must then decide whether to exercise our discretion to review and correct the error and explain our reasons for doing so. *Id.* at 630; *see also Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991) (describing nonexclusive list of factors to consider when deciding whether to exercise discretion to correct a plain error).

We conclude that the error is plain. Whether the trial court acted within its statutory authority is a question of law. *Gilmore and Ambrose*, 258 Or App 747, 748, 311 P3d 970 (2013) (absent *de novo* review in a child support case, "we review the trial court's decision for legal error"); *cf. Dept. of Human Services v. A. B.*, 286 Or App 578, 580, 401 P3d 279 (2017) (reviewing "whether the juvenile court acted within its statutory authority, including the construction of relevant statutes, for legal error"). The error is apparent on the face of the record: mother was served with father's motion on July 11, 2022, and the supplemental judgment orders child support "retroactive to September 1, 2020."

Further, the error is obvious and not reasonably in dispute. ORS 107.135(1)(a) provides that a court may, "upon the motion of either party and after service of notice on the other party in the manner provided by ORCP 7, * * * [s] et aside, alter or modify any portion of the judgment that provides for the * * * support and welfare of the minor children[.]"[2] Further, ORS 107.135(7) provides, in part, that such a "judgment is final as to any installment or payment of money that has accrued up to the time the nonmoving party, other than the state, is served with a motion to modify the judgment." Finally, ORS 107.135(6) makes clear that "[a]ny modification of child * * * support * * * may be ordered effective *retroactive to the date the motion for modification was served or to any date thereafter.*" (Emphasis added.)

---

[2] Parents who were never married to each other "have the same rights and responsibilities regarding the custody and support of, and parenting time with, their child that married or divorced parents would have, and the provisions of ORS 107.094 to 107.449 that relate to custody, support and parenting time * * * apply to" a civil proceeding to determine the custody or support of, or parenting time with, the child. ORS 109.103.

We have consistently construed those statutes and their predecessors to authorize a trial court to modify child support only prospectively. *See, e.g.*, *Mason and Mason*, 193 Or App 300, 301, 89 P3d 1205 (2004) (per curiam) (trial court erred in *sua sponte* imposing retroactive child support obligation without appropriate motion); *Thomsen and Thomsen*, 167 Or App 218, 223, 2 P3d 432 (2000) ("[I]t is well settled that we may modify spousal and child support awards only from the date of the motion for modification forward; all amounts previously in arrears have become judgments and may not be modified, except in very narrow circumstances not at issue here."); *Pedroza and Pedroza*, 128 Or App 102, 106-07, 875 P2d 478 (1994) ("The Oregon appellate courts have repeatedly held that, under ORS 107.135([7]) and its predecessors, 'installments of child support that have accrued before a motion to modify is made become final judgments and are beyond the power of the court to modify.'" (Quoting *Sheldon and Sheldon*, 82 Or App 621, 623, 728 P2d 946 (1986), *rev den*, 302 Or 615 (1987), and collecting cases). That rule of law is rooted in concerns for the finality of judgments. *Eagen and Eagen*, 292 Or 492, 495, 640 P2d 1019 (1982) ("[T]he purpose of the enactment of what is now numbered ORS 107.135([7]) was to raise support orders to the dignity of judgments, enforceable as such."); *Poe v. Poe*, 246 Or 458, 459, 425 P2d 767 (1967) ("This court has repeatedly held, since the finality of the installment judgment was added to the statute in 1921 (Oregon Laws 1921, ch 114, p 225), that the court is without power to modify or change support money payments once they have become a judgment.").

Contending that the error is not obvious, father argues that ORS 107.135(15)[3] authorized the trial court

---

[3] ORS 107.135(15) provides:

"(a) It is the policy of this state:

"(A) To encourage the settlement of cases brought under this section; and

"(B) For courts to enforce the terms of settlements described in paragraph (b) of this subsection to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy.

"(b) In a proceeding under subsection (1) of this section, the court may enforce the terms set forth in a stipulated order or judgment signed by the parties, an order or judgment resulting from a settlement on the record or an order or judgment incorporating a settlement agreement:

"(A) As contract terms using contract remedies;

to enforce the parties' "stipulated agreement" regarding retroactive child support. We reject that argument. By its plain terms, ORS 107.135(15) authorizes a trial court to enforce the terms set forth in "a stipulated *order or judgment* signed by the parties, an *order or judgment* resulting from a settlement on the record[,] or an *order or judgment* incorporating a settlement agreement." (Emphases added.) Mother's written stipulation in her responsive pleading and her oral assent at the modification hearing are not "order[s] or judgment[s]" within the meaning of ORS 107.135(15). Father's reliance on *Reeves and Elliott*, 237 Or App 126, 238 P3d 427 (2010), is similarly misplaced because that case involved the enforcement of a stipulated judgment of dissolution that squarely falls within the terms of ORS 107.135(15). In any event, we have held that a stipulated judgment cannot provide for retroactive modification of support to a date before the filing of the motion to modify because the agreement "cannot confer authority on the court that ORS 107.135([7]) expressly withholds." *Hutchinson and Hutchinson*, 187 Or App 733, 745-46, 69 P3d 815 (2003) (en banc).[4]

Having concluded that the error is plain, we exercise our discretion to correct it. The ends of justice militate against requiring mother to pay an obligation that the trial court was not statutorily authorized to impose. *Cf. State v. Riverman*,

---

"(B)  By imposing any remedy available to enforce an order or judgment, including but not limited to contempt; or

"(C)  By any combination of the provisions of subparagraphs (A) and (B) of this paragraph.

"(c)  A party may seek to enforce an agreement and obtain remedies described in paragraph (b) of this subsection by filing a motion, serving notice on the other party in the manner provided by ORCP 7 and, if a remedy under paragraph (b)(B) of this subsection is sought, complying with the statutory requirements for that remedy. All claims for relief arising out of the same acts or omissions must be joined in the same proceeding.

"(d)  Nothing in paragraph (b) or (c) of this subsection limits a party's ability, in a separate proceeding, to file a motion to modify an order or judgment under subsection (1) of this section or to seek enforcement of an ancillary agreement to the order or judgment."

[4]  We note that father does not argue on appeal that mother is liable for S's "uninsured medical expenses" under the terms of the original 2008 judgment or the 2021 supplemental judgment. ORS 107.104 provides for a proceeding to enforce the terms of an existing judgment; father's motion at issue in this appeal sought relief under ORS 107.135 to modify an existing judgment, not to enforce it under ORS 107.104.

320 Or App 388, 392, 513 P3d 13 (2022) (exercising discretion to correct a plainly erroneous restitution award "because the interests of justice weigh against requiring defendant to pay an obligation that is unsubstantiated by the record"). Of the challenged financial obligations imposed in the supplemental judgment, all but a $130 "2022 Summer School Baggage Fee" listed in the Wasatch invoice accrued before mother was properly served with father's motion to modify. Further, the retroactive child support award alone ($26,274) is a substantial financial obligation that is sufficiently grave to warrant exercising our discretion to correct it. *Id.* (exercising discretion to correct nearly $10,000 plainly erroneous restitution award due to the substantial gravity of the error).

Finally, we are unpersuaded by father's arguments that we should decline to exercise our discretion to correct the error, at least with respect to retroactive child support and to Aspiro. In deciding whether to exercise our discretion, we may also "consider whether the party alleging the plain error encouraged the error or made a strategic choice not to object to it." *State v. Wiltse*, 373 Or 1, 23, 559 P3d 380 (2024). Here, it was father, through counsel, who initially and repeatedly sought retroactive support contrary to established law. And the trial court, which in other respects *sua sponte* interjected to guide mother as to the relevant legal issues at the hearing, made clear at the very beginning that mother's *pro se* concession in her responsive pleading took that issue off the table. In our view, the circumstances of this case suggest that mother's uncounseled concession in her responsive pleading did not encourage the error so much as acquiesce to it. And, contrary to father's position, we discern no plausible strategic reason for mother agreeing to retroactive child support when it was not legally authorized. As to Aspiro, mother consistently objected to those expenses.[5]

_____

[5] Father has repeatedly asserted, both below and on appeal, that mother "stipulated" to S attending Aspiro because it is the "3-week camp in Utah" referenced in the June 2021 stipulated supplemental judgment. That argument is not well taken. To the extent that that provision of the stipulated judgment was referring to Aspiro at all, it did so in the context of mother stipulating to an exception to her parenting time and not as stipulating to S's attendance or to mother's financial liability for the program's cost. In any event, the record reflects that S actually attended a three-week camp at Wasatch Academy in the summer of 2021 and that she attended Aspiro for eight weeks in October and November of 2021.

We therefore vacate the supplemental judgment as to the retroactive support award and concomitant statutory interest. On remand, the court may order child support and statutory interest retroactive no earlier than July 11, 2022. We also vacate the supplemental judgment as to the "unreimbursed medical expenses" award. On remand, the trial court may award expenses accrued no earlier than July 11, 2022.

## FIRST ASSIGNMENT OF ERROR

The only remaining expense mother challenges that is not resolved by her second assignment of error is the $130 "2022 Summer School Baggage Fee" listed in the Wasatch invoice. Mother's first assignment of error challenges all expenses related to Wasatch and Aspiro, including that $130 fee, on several grounds. Father concedes that Wasatch tuition and related expenses are "education costs" and not "medical" costs and that the trial court erred in ordering them separate from child support. We accept father's concession. *See Berry and Berry*, 196 Or App 296, 300, 101 P3d 817 (2004) (trial court erred in ordering education costs separate from child support instead of as rebuttal factor to deviate from presumptive amount under guidelines); *Wiebe and Wiebe*, 113 Or App 535, 538, 833 P2d 333 (1992) ("The educational expenses of a child *may* justify a deviation from the presumed amount of child support provided by the guidelines, * * * but those expenses are a part of, and not in addition to, a child support obligation and are subject to the statutory limitations of such an obligation." (Emphasis in original.)). As our disposition on mother's second assignment of error already requires that we vacate the "unreimbursed medical expenses" award, on remand the trial court may not order mother to pay the $130 Wasatch "2022 Summer School Baggage Fee" as a "medical expense."[6]

Supplemental judgment vacated and remanded as to retroactive child support, statutory interest, and "unreimbursed medical expenses" awards; otherwise affirmed.

---

[6] Although father asks for "a limited remand for the purposes of entering a child support rebuttal for S's average boarding school costs," he did not cross-assign error to the trial court's ruling awarding him prospective monthly child support. We therefore affirm the supplemental judgment as to mother's monthly child support obligation to father.