**In the Matter of the WELFARE OF T.J.J. and G.L.J.**

**No. C8–84–1678.**

Court of Appeals of Minnesota.

April 23, 1985.

William R. Kennedy, Hennepin County Public Defender, David M. Duffy, Asst. Public Defender, Minneapolis, Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Deonne Parker, Nancy McClain, Asst. Hennepin County Attys., Minneapolis, for State.

G.J., pro se.

Randy Decker, Wright S. Walling, Thomas O'Connor, Minneapolis, for T.J.J.

Heard, considered and decided by CRIP-PEN, P.J., and PARKER and WOZNIAK, JJ.

## OPINION

CRIPPEN, Judge.

The trial court terminated appellant's parental rights to her two children, G.J. and T.J. Appellant, who is an American Indian, asserts that the court order was not supported by sufficient evidence, that psychologists who testified were not qualified experts under the Indian Child Welfare Act, and that the county did not offer sufficient remedial services to the mother. The court found that clear and convincing evidence showed many of the conditions listed as grounds for termination under Minn.Stat. § 260.221(b) (1984). The court also found proof beyond a reasonable doubt that "return of the children to their mother is likely to result in serious emotional harm of [the children]." *See* 25 U.S.C. § 1912(f) (1983). Legal custody of the children was transferred to the Minnesota Commissioner of Public Welfare. We affirm.

## FACTS

G.J. was born on August 14, 1968, and is 16. Her sister, T.J., was born on September 21, 1971, and is 13. Their parents are appellant D.W. and G.J., who were married in 1966 and divorced in 1975. Appellant is a member of the Chippewa Tribe. The father chose not to participate in the case and his parental rights were terminated by default.

### I

Disruption of the family began in 1972. Between July 1972 and June 1974, T.J. and G.J. were placed in shelter care five times. Appellant left the household in 1973 because the father physically abused her. The children remained with their father. The parents' 1975 divorce decree granted the father custody of the children. Between 1975 and 1979, the mother visited the children four times.

In 1979, following sexual abuse by the father, the children were found dependent and neglected. The court placed the children with their half-brother in Faribault, Minnesota. This arrangement ended in December 1981 when the half-brother and his wife separated. Since 1982, the children have lived in a foster home.

In 1979, the trial court found that the mother "made no reasonable attempts to locate the children or contact them although she knew [the father] to be a violent man based on injuries he had inflicted on her in the past." The court transferred custody of the children to a county agency and required the mother to undergo testing, including a chemical dependency evaluation, as a precondition to visiting the children.

Since 1979, the mother has visited the children twice. She states that she did not know where the children were placed. A social worker, Jane Cornelius, testified that she offered to bring the mother to the children. Cornelius saw the mother on a regular basis and testified that she informed her of the children's whereabouts. She stated that the mother did not inquire about their location or about their health, school, friends, or any other aspect of the children's lives. Except for the two visits, the mother has not written, telephoned, sent greetings or gifts, or otherwise communicated with the children in recent years.

Based on evidentiary findings that accurately reflect this record, the court determined that appellant had abandoned the children. *See* Minn.Stat. § 260.221(b)(1) (1984).

### II

In 1974, a Hennepin County trial court determined that appellant, who suffered drinking problems, refused to rehabilitate her health. She was hospitalized due to her severe alcoholism in 1980. She has not complied with the 1979 court order to undergo testing as a precondition to visiting the children. Based on appellant's history of neglecting the children and her own

health, the court determined that she was palpably unfit and "that it was not likely that [she] will ever be willing or able to provide the minimum requirements to establish a relationship with her daughters." *See* Minn.Stat. § 260.221(b)(4) (1984).

### III

Between 1980 and 1983, Jane Cornelius contacted appellant monthly by phone and visited her bi-monthly. She testified that she continually reminded the mother of her goals under the 1979 dependency and neglect order to undergo testing. She offered the necessary transportation and indicated that the tests were free. The mother did not respond. Once in 1983, appellant indicated her willingness to take the chemical dependency evaluation. Her present husband did not come with her to the evaluation, although she was told beforehand that the test could not be performed without him. The next day appellant called Cornelius and told her she would not take anymore tests. In light of the case history and these additional facts, the trial court determined that the mother continuously refused to provide parental care; that despite help, her previous neglect was uncorrected; and that the children were neglected and in foster care. *See* Minn.Stat. §§ 260.221(b)(2), (5), (7) (1984).

### IV

Both G.J. and T.J. testified that they desired a termination of parental rights. This was consistent with the court's findings in the 1979 dependency and neglect case:

> G.L. is very angry at her mother for deserting her and her sister and has stated that she hates her mother and never wants to see her.
>
> T.J. was two years old when her mother left her and did not recognize her when she visited this year.
>
> G.L. strongly resists any visits by her mother.

Two psychologists, van Buskirk and Duane, each testified that the current foster care arrangement is a good environment for the children because of its stability and structure. They each stated that an attempt to reunite the children with the mother would result in serious emotional harm to the children. The court found that the mother-child relationship had "completely broken down," and that attempts to reunite would likely cause serious harm to the children. *See* Minn.Stat. §§ 260.221(b)(7) (1984); 25 U.S.C. § 1912(f); *Matter of Welfare of HGB*, 306 N.W.2d 821, 827 (Minn.1981) (the child's best interests are balanced with a parent's interests when applying § 260.221(b)(7)).

### V

Appellant mother is 41 years old. She testified that she desires custody of the children. She has remarried. She currently babysits for three children. She states she recovered from alcohol dependency three years ago. She testified that medical problems stemming from alcoholism would not impede her ability to care for the children.

### ISSUES

1. Was there sufficient evidence that return of custody of G.J. and T.J. to appellant would seriously damage the emotional health of the children?

2. Were two psychologists qualified as expert witnesses within the meaning of the Indian Child Welfare Act?

3. Were the county's remedial efforts, though unsuccessful, sufficient for purposes of the Indian Child Welfare Act?

### ANALYSIS

▇▇ Our standard of review under section 260.221 regarding the termination of parental rights is stringent. Although deference is given to the trial court's findings, we exercise great caution in reviewing a petition for termination. *Matter of Welfare of Chosa*, 290 N.W.2d 766, 769 (Minn. 1980). We keep in mind that the state has the burden to show that the evidence on statutory grounds clearly mandates termination. *Matter of Welfare of Solomon*,

291 N.W.2d 364, 367–68 (Minn.1980). Parents should not be deprived of their fundamental rights except for grave and weighty reasons. *Matter of Welfare of HGB*, 306 N.W.2d at 825. Our overriding concerns are the child's best interests and the preservation of the family. *In re Klugman*, 256 Minn. 113, 118, 97 N.W.2d 425, 428–29 (1959); Minn.Stat. § 260.011, subd. 2 (1984).

1.

Our review of the record and of the trial court's findings indicates that there are adequate grounds to terminate the mother's rights under section 260.221. The record supports the thorough findings already reviewed, and the trial court determination that grounds for termination were shown by clear and convincing evidence.

Because appellant is a Chippewa Indian she is entitled to the additional safeguards of federal law. The Indian Child Welfare Act (the Act) permits termination of parental rights only upon showing:

> by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent * * * is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912(f) (1983).

The trial court found specifically that attempts to reunite the children with appellant would seriously harm the children, and that this was proven beyond reasonable doubt. This finding is supported by evidence indicating the mother's chronic failure in parenting and by testimony of psychologists that such a dramatic change from the children's present environment would be detrimental to them. The evidence satisfies the federal standard for termination of parental rights.

2.

Appellant contends that the two psychologists, van Buskirk and Duane, do not qualify as experts under the Indian Child Welfare Act because neither has had extensive exposure to American Indian culture. Therefore, the argument continues, the standard for termination under section 1912(f) was not met because it was not supported by expert testimony. The trial court held that both psychologists qualified as experts under the Act.

In fact, both psychologists have had coursework in Indian culture and Duane particularly is experienced in working with Indian youth. Further, a witness' background in Indian culture does not necessarily determine whether that witness qualifies as an expert under the Act. Addressing the identical issue, the court in *Matter of K.A.B.E.*, 325 N.W.2d 840 (S.D.1982), stated:

> The qualifications and competency of a witness to give opinion evidence is primarily in the discretion of the trial court and his ruling in determining qualifications will not be disturbed unless there is no evidence that the witness had the qualifications of an expert or the trial court has proceeded upon erroneous legal standards.

325 N.W.2d at 844 (*quoting State v. Riiff*, 73 S.D. 467, 475, 44 N.W.2d 126, 130 (1950)). Because the Act itself establishes no specific qualifications for expert witnesses, this statement of law is correct.

Appellant asserts that guidelines promulgated by the Minnesota Department of Public Welfare should control:

> Persons with the following characteristics are most likely to meet the requirements of a qualified expert for purposes of Indian child custody proceedings ... A professional person having substantial education and experience in the area of his or her specialty along with substantial knowledge of prevailing social and cultural standards and child rearing practices within the Indian community.

Minn DPW Soc. Serv. Manual. The guidelines are appropriate. However, they do not singularly control the trial court. The trial court has broad discretion to assess whether a witness's knowledge is substantial and to consider all likely indicators of expertise. There is no basis to conclude this discretion was abused here.

### 3.

Appellant contends that the county did not make sufficient remedial efforts to reunite her with the children. The Indian Child Welfare Act requires:

Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

25 U.S.C. § 1912(d) (1983).

■ The court in 1979 created a plan for appellant to be reunited with her children. Jane Cornelius, a social worker, was in contact with appellant on a monthly basis. The primary purpose of her calls and visits was to stimulate the appellant's interest in rehabilitation and counseling, with the goal of reuniting her with the children. Cornelius stated that the appellant had no interest in pursuing this goal. Her testimony was detailed. It supported a finding that the county actively offered remedial services.

### DECISION

The termination of appellant's parental rights was supported by adequate evidence. Two witnesses were properly treated as experts under the Indian Child Welfare Act. Evidence adequately shows the active remedial efforts of social service staff.

Affirmed.