In the Matter of
Loren Woodruff, Edith Woodruff
and Abraham Woodruff, Children.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
Loren Woodruff, Edith Woodruff
and Abraham Woodruff,
*Respondents,*

*v.*

Loren WOODRUFF,
*Appellant.*

(8610-81564 B, C & D; CA A66344)

816 P2d 623

John P. Manning, Portland, argued the cause and filed the brief for appellant.

John Reuling, Jr., Assistant Attorney General, Salem, argued the cause for respondent Juvenile Department. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

No appearance for respondents Loren Woodruff, Edith Woodruff and Abraham Woodruff.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

DEITS, J.

---

* Joseph, C. J., *vice* Newman, J.

### DEITS, J.

Father appeals an order terminating his parental rights to his three children, who are members of the Chickasaw Indian Nation. He argues that the termination order is invalid because of the state's failure to comply with the Indian Child Welfare Act (ICWA). We affirm.

The children, a girl, 9, and two boys, 11 and 2 1/2, were made wards of the court in November, 1987. Both parents have a long history of addictive use of alcohol and controlled substances. The youngest child was born with methadone in his urine. The mother has been incarcerated intermittently. Father is currently imprisoned on one forgery and four robbery convictions. He is serving four ten-year sentences and one three-year sentence, to be served consecutively. Both parents had sexually abused their daughter. The mother was convicted on one count of sexual abuse, and father was convicted on three counts. Father was sentenced on those convictions to five years in the state penitentiary with a two and one-half year minimum to be served consecutively to the sentences previously recited. He will not be out of prison until 1995, at the earliest. Neither parent has been steadily employed. Except for brief periods, the mother's whereabouts have been unknown since September, 1987. She was notified of the termination hearing, but did not appear. Her parental rights were also terminated, but she has not appealed.

From July, 1987, until January, 1988, father received assistance from CSD, including probation services, alcohol and drug evaluation and referrals for treatment, the Salvation Army Adult Rehabilitation Center-Residential Alcohol Program and community health nurse services. In late 1987, the mother was gone from the home, and father requested CSD to care for the children temporarily. CSD placed them in two foster homes with non-Indian parents. Father had regular contact with them until January, 1988, when he was arrested for the robberies. He was convicted and sentenced in April, 1988. The daughter disclosed to her therapist that her father abused her and, in November, 1988, he was convicted of sexual abuse. Father still denies abusing his daughter. He has not made lasting progress in his ability to care for the children, even aside from his being in prison.

They remained in the same foster homes until the termination proceedings.

When father requested assistance with the children in September, 1987, he told CSD that they were of Indian heritage. ICWA applies to child custody proceedings involving an "Indian child" as defined in 25 USC § 1903(4).[1] On December 11, 1987, CSD sent a letter to the Chickasaw Indian Nation, in Oklahoma, asking if the children or either parent were members of the tribe. Eleven days later, the tribe responded with a request for more information; it enclosed an application for CSD to fill out and to return along with birth certificates. There is no evidence that CSD returned the form. Instead, CSD sent another letter, similar to the previous one, in June, 1988. The tribe responded two weeks later, sending copies of the earlier correspondence and again requesting more information.

On December 8, 1988, after a request by the juvenile court to document the efforts made to comply with ICWA, CSD telephoned the tribal headquarters. In response, it again requested CSD to submit applications and birth certificates. On December 23, 1988, CSD submitted the applications and the children's birth certificates. A week later, the tribe replied:

"These children are eligible for membership within the Chickasaw tribe. [Their great grandparents] were enrolled members of the Chickasaw tribe.

"The Chickasaw tribe will not intervene in these proceedings. We are confident that the mandates of Indian Child Welfare Act, P.L. 95-608, will be followed. Interpretation for placement is extended family, tribal placement, other Indian families and non-Indian placement is the last consideration."

The mother and the children were finally enrolled in the Chickasaw Indian Nation in December, 1989, (a year later)

---

[1] Under 25 USC § 1903(4),

" 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]"

shortly after CSD submitted the mother's and the grandmother's birth certificates.[2]

CSD filed a petition to terminate the mother's and the father's parental rights on September 1, 1989. A hearing on the petition was originally scheduled for January, 1990. However, it was postponed in order to give the tribe sufficient notice of the hearing. The tribe again notified CSD that it would not intervene in the termination proceedings. A hearing was held in April, 1990, and the trial court granted the petition to terminate.

■ Father assigns error to the trial court's denial of his motion to dismiss the petition to terminate and its conclusion that the allegations in the petition were proven beyond a reasonable doubt, as required by ICWA. He first asserts that the placement of the children in foster care violated the provisions establishing preferences for foster placement. 25 USC § 1915(b) provides that, "in the absence of good cause to the contrary," preference in placement shall be given to:

"(i) a member of the child's extended family;

"(ii) a foster home licensed, approved, or specified by the Indian child's tribe;

"(iii) an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or

"(iv) an institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs."

The children were not given any of those placements. However, even assuming that there was not good cause not to place the children properly and that the provision was therefore violated, the act does not make the violation of the placement preferences a basis for dismissing a petition for termination.[3] ICWA provides that an Indian child who is the

---

[2] In April, 1989, CSD began trying to establish father's tribal affiliation but was unable to do so.

[3] We do not decide whether those provisions of 25 USC § 1915(b) were satisfied. We note, however, that the trial court found that "the children were in non-ICWA placements even after it was clear that they were covered by the Act," and it ordered:

"2. That Children's Services Division immediately comply with the placement preferences specified by the Tribe and the Indian Child Welfare Act.

"3. That if the children are not in an ICWA placement within 60 days, this

subject of foster care placement or parental rights termination, the parent of the child or an Indian custodian may petition the court to invalidate the court's action "upon a showing that such action violated any provision of [25 USC §§ 1911, 1912, 1913]." Failure to comply with the foster care placement preferences in § 1915(b) is not a basis for invalidating a court order terminating parental rights. 25 USC § 1914.

■ Father also argues that the act was violated, because he was not advised of his rights as required by 25 USC § 1913(a).[4] However, that requirement applies only when a person voluntarily consents to termination, which is not the case here. Although father's initial request for CSD assistance in caring for his children was voluntary, the termination proceedings were involuntary and were initiated by CSD after he had been convicted of sexually abusing his daughter.

■ Father contends that CSD violated 25 USC § 1912(d) by not offering him "remedial services and rehabilitation programs designed to prevent the breakup of the Indian family." The trial court found that CSD had provided such services. There was evidence that father had been offered such services, including drug and alcohol treatment programs, anger management and sex offender treatment. However, he denies that he has sexual or substance abuse problems and has declined to participate in those programs. We conclude that, in view of the nature of father's problems, the services provided were appropriate. *See State ex rel Juv. Dept. v. Tucker,* 76 Or App 673, 683, 710 P2d 793 (1985), *rev den* 300 Or 605 (1986).

---

matter will be scheduled before this judicial officer for an immediate placement review."

[4] 25 USC § 1913(a) provides:

"Where any parent or Indian custodian voluntarily consents to a foster care placement or to termination of parental rights, such consent shall not be valid unless executed in writing and recorded before a judge of a court of competent jurisdiction and accompanied by the presiding judge's certificate that the terms and consequences of the consent were fully explained in detail and were fully understood by the parent or Indian custodian. The court shall also certify that either the parent or Indian custodian fully understood the explanation in English or that it was interpreted into a language that the parent or Indian custodian understood. Any consent given prior to, or within ten days after, birth of the Indian child shall not be valid."

■ Father also argues that CSD violated 25 USC § 1912(f) by not providing appropriate expert testimony. Section 1912(f) provides:

> "No termination of parental rights may be ordered in any proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or custodian is likely to result in serious emotional or physical damage to the child."

We have held that, as a general proposition, an expert witness within the meaning of this statute is a person with specialized knowledge of "social and cultural aspects of Indian life." *State ex rel Juv. Dept. v. Charles,* 70 Or App 10, 16 n 3, 688 P2d 1354 (1984), *rev dismissed* 299 Or 341 (1985).

A counseling psychologist, herself an Indian, reviewed the children's files and testified. She specializes in Indian culture and has approximately 20 years experience in treating Indian families and adolescents. She first described similarities among Indian tribes in child-rearing practices, particularly non-physical discipline methods, freedom given to children and the importance of extended families. She testified that neither substance nor sexual abuse is acceptable in Indian culture. Responding to a question about the impact of substance abuse on the children, she testified that they would feel no security, would mature much faster than they should and would have no chance to be children. When asked about the impact of the sexual abuse, she testified:

> "[I]t has the same impact it would have with any family. Sex abuse * * * affects the child so much more than anything else that could ever happen to that child emotionally for the rest of her life."

She also testified that the children suffered from neglect and the extended absences of their parents and that "the chances of these parents ever being able to care for these children is highly unlikely." We conclude that the trial court properly denied father's motion to dismiss the petition to terminate.[5]

---

[5] Father also argues that CSD violated its own administrative rules by not following ICWA when it knew that the children and parents are of Indian heritage. OAR 412-26-035(8) provides:

> "If the child is not a member of his or her tribe, but is applying to become a member, the caseworker shall proceed as though the child is a member and

■     Finally, father argues that, under ICWA, termination must be proven beyond a reasonable doubt and that the state failed to do so. The standard of proof for the termination of rights to Indian children is beyond a reasonable doubt, 25 USC § 1912(a), and we conclude that the standard was met. We find that the evidence establishes beyond a reasonable doubt that father is unfit as a parent and that reintegration into the home is not likely to occur in the foreseeable future. ORS 419.523(2).

Affirmed.

---

follow the requirements of the Act. Division staff shall assist the family in filling out and returning required paperwork to the appropriate tribe and, as necessary, counsel parents hesitant to enroll a child by emphasizing the positive benefits of tribal membership."

Again, failure to comply with that provision does not provide a statutory basis to invalidate the termination, and we need not decide whether CSD complied with the rule.