2002 OK CIV APP 26

In The Matter of the ADOPTION OF S.W. and C.S., Minor Children.

In The Matter of S.W., A child under 18 years of age.

In The Matter of C.S., A child under 18 years of age, Cherokee Nation, Appellant,

v.

State of Oklahoma, Mark and Catherine Cunningham, and S.W. and C.S., Appellees.

No. 95,681.

Court of Civil Appeals of Oklahoma, Division No. 4.

Sept. 18, 2001.

Rehearing Denied Oct. 30, 2001.

Certiorari Denied Feb. 5, 2002.

1004 

Becky M. Johnson, Cherokee Nation, Tahlequah, OK, for Appellant Cherokee Nation.

Benjamin Faulkner, Tulsa, OK, for Appellees Mark and Catherine Cunningham.

Joseph W. Strealy, Assistant General Counsel, Department of Human Services, Oklahoma City, OK, for Appellee Department of Human Services and Michelle Huffman, Public Defenders Office, Juvenile Bureau, Tulsa, OK, for Appellees S.W. and C.S.

KEITH RAPP, Judge.

¶ 1 The Cherokee Nation (Nation) appeals two orders of the District Court of Tulsa County. The first order consolidated two actions involving petitions to declare minors S.W. and C.S. as deprived children with an adoption proceeding filed by the appointed foster parents of both children, Mark and Catherine Cunningham (Foster Parents.) The second order denied the Nation's request to transfer the deprived action to the Cherokee Tribal Court.

BACKGROUND

¶ 2 This case involves two children born out of wedlock, their mother, who is no longer a party because she relinquished her parental rights, separate fathers, who are brothers, Oklahoma Department of Human Services (DHS), the State of Oklahoma, the Cherokee Nation, Foster Parents, and a half-sibling of S.W. and C.S., and that half-sibling's adoptive parents.[1] The case also involves three court proceedings: (a) a Deprived Child proceeding involving S.W.; (b) a Deprived Child proceeding involving C.S.; and (c) an adoption petition filed by Foster Parents.

¶ 3 According to the record here, none of these proceedings has been concluded. This appeal concerns two preliminary rulings. The parties appearing by Briefs here are the Nation, as appellant, and as appellees, DHS, the children, and Foster Parents.[2]

Parties and Proceedings—S.W.

¶ 4 S.W. was born to an unwed, non-Indian mother in April 1998. The father listed on the birth certificate was also non-Indian.[3] S.W. was taken into custody of DHS in March 1999, returned and then in October 1999, a Deprived Child petition was filed in the District Court of Tulsa County and assigned to the juvenile division.

¶ 5 The petition named Kevin Starr (Kevin S.) as well as the birth certificate father. Kevin S. is a member of the Cherokee Nation. Notice was duly given to the Nation. On January 15, 2000, S.W. was placed with Foster Parents.

¶ 6 The Nation intervened in the Deprived Child action on March 10, 2000, and had an active role in placement proceedings. The Nation rejected Kevin S. and members of his family, after home studies were conducted.

Nation favored permanent placement of S.W. with a family who had adopted a half-sibling of S.W. This family, as well as the half-sibling, are non-Indian. DHS, by a filing on October 19, 2000, supported the Nation's recommendation before the Juvenile Court hearing the Deprived Child petition but now, in this Court, supports the Foster Parents.

¶ 7 With the proceedings under way, Kevin S. was, after a paternity test, determined to be the actual father. The test results were available beginning October 4, 2000. Faced with the DNA test results, he thereafter acknowledged paternity in October 2000.

¶ 8 On October 19, 2000, the Nation filed a petition to transfer the case to the Tribal Court. The Juvenile Court set hearing for October 25, 2000, and then continued the hearing to October 31, 2000.

Parties and Proceedings—C.S.

¶ 9 C.S. was born to the same mother as S.W. but with Dewayne Starr as the putative father. Dewayne Starr (Dewayne S.) is also a member of the Cherokee Nation. A Deprived Child petition was filed in November 1999, as to C.S. The Nation was duly notified. In January 2000, C.S. was also placed with Foster Parents.

¶ 10 The Nation became a party on March 10, 2000. The Nation's investigation and placement decisions for C.S. were the same as for S.W. DHS supported the Nation at trial, but again opposes the Nation here.

¶ 11 Dewayne S. acknowledged paternity on August 30, 2000.

¶ 12 The Nation, on October 19, 2000, filed a petition to transfer the case to the Tribal Court. The Juvenile Court set hearing for

---

**1.** Another non-Indian individual, Steve W., was listed on the birth certificate as father of S.W., and subsequently by order in a child support administrative hearing declared to be the father, but no party now asserts that this individual is in fact the father and he is not a party to these proceedings.

**2.** Here, the State of Oklahoma, represented by the District Attorney of Tulsa County, has not filed a brief. Likewise, neither of the Indian fathers have filed a brief. In the proceedings below, DHS and the State and the fathers sup-

ported Nation's request to transfer the cause to Tribal Court. DHS here has changed its position and now opposes the transfer and argues that the trial court should be affirmed. Although perhaps unusual, a party can always accept the ruling and argue its validity, even though such position may be inconsistent with its initial position. That situation is different from the case in which a party takes inconsistent positions at the trial level and the appeal level in an effort to overturn the trial court result.

**3.** See fn. 1.

October 25, 2000, and then continued the hearing to October 31, 2000.

### Parties and Proceedings—Foster Parents

¶ 13 The Juvenile Court hearing the Deprived Child cases had ordered visitation with the half-sibling. After the Foster Parents had failed to deliver S.W. and C.S. for visitation, the Juvenile Court, on August 30, 2000, ordered that the visitation continue.

¶ 14 The Foster Parents thereafter, on October 6, 2000, filed a petition to adopt both children. This case was assigned to the Probate Division of the District Court in accordance with local court rules. Rule 2, Rules of the Fourteenth Judicial District.

### Trial Court Rulings On Appeal

¶ 15 On October 24, 2000, the Foster Parents filed a request that the Deprived Child cases be transferred to the Probate Division of the District Court. The Nation opposed the transfer on the sole ground that it desired to have its transfer petition decided first. After a hearing, the Probate Division trial judge, to whom the adoption case had been assigned, ordered that the Deprived Child cases be reassigned to the Probate Division, thereby consolidating the three cases into a single one.[4] This Court notes that the transfer request was filed only in the Child Deprivation cases and not in the adoption case. One aspect of the Nation's present appeal concerns the reassignment.

¶ 16 Thereafter, this same judge heard Nation's petition to transfer the Deprived Child cases to the Tribal Court. This hearing was conducted on briefs and oral argument, but no evidence was presented.[5]

¶ 17 The principle arguments in the hearing on transfer to the Tribal Court involved a question of whether the trial court could consider the best interests of the children. The trial court concluded that the children's best interests were a criterion and, clearly

from the transcript, placed great weight on this criterion. The trial court denied the request to transfer the matter to the Tribal Court. The "good cause" reasons for denial as stated in the Journal Entry are:

1. The Petition to Transfer was not timely filed;

2. The Tribal Court is an inconvenient forum; and

3. A transfer to Tribal Court would not be in the best interest of the children.

Nation also appeals this ruling.

### STANDARD OF REVIEW

¶ 18 The appellate court has the plenary, independent and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.,* 1996 OK 125, 932 P.2d 1100 n. 1. Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Keizor v. Sand Springs Ry. Co.,* 1993 OK CIV APP 98, ¶ 5, 861 P.2d 326, 328.

### ANALYSIS AND REVIEW

#### Consolidation of Proceedings

¶ 19 Nation devotes a substantial part of its arguments here to its claim of error in bringing the Deprived Child cases together with the adoption case. The Nation's appeal of this ruling has no merit because:

— There is only one District Court in Oklahoma. Dockets are established for administrative purposes. *20 O.S. Supp.2000, 91.2* (A). Thus, there is no jurisdictional conflict between divisions or dockets of the District Court. The statute and the Supreme Court have established presiding judges to deal

---

4. The parties have referred to this judge and this trial division as the "Probate Judge." However, it must be made clear that this designation refers to the administrative departments created by local rule rather than the formal rules of procedure applicable to either the adoption case or the Deprived Child cases, all of which are governed by their respective statutes and the Rules of Civil Procedure.

5. The Nation appended an affidavit which indicated that Foster Parents would not participate in providing Indian cultural education and associations for the children. Foster Parent's experts' affidavits concentrated on the effects of bonding on young children and their need for permanent relationships. None of these affidavits were offered into evidence.

with administrative matters and local rule-making. *20 O.S.1991, 23* (2). The Fourteenth Judicial District handles reassignments of cases by presentment of the question to the judge who would be taking the transfer, as was done here. Rule CV 3, Rules of the Fourteenth Judicial District.

— Nation had no objection to the transfer other than it desired to have its request for removal to the Tribal Court heard. Nation's request was promptly docketed and heard.

— Nation argues here that conflicts between the Deprived Child procedures and the adoption procedures and statutory proscription against combining the two actions prevent the consolidation. However, Nation's argument assumes that the result of the consolidation is a blending of the cases into a single action. Such was not the case, and the trial court specifically noted that separate procedures, such as right to jury trial, would be followed, as applicable, in each type of case. In addition, the trial court has ample authority to bifurcate the proceedings and to conduct the matters to conclusion without internal conflict and in accord with applicable procedures. *12 O.S.1991, 2018* (D).

¶ 20 Thus, under the facts, and applicable law, no error exists by reason of the consolidation of all cases before a single District Court judge.

### Denial of Request to Transfer to Tribal Court—The Issues Presented

¶ 21 Both children are Indian children for purposes of the Federal Indian Child Welfare Act (FICWA.) [6] Neither of the children reside within or are domiciled on an Indian reservation, as that is defined.[7] Therefore, the applicable provision of the FICWA is 25 U.S.C. § 1911(b), which provides:

> In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, *in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe,* absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe. (Emphasis added.)

¶ 22 When, as here, the children do not reside in or are not domiciled on a "reservation" then Section 1911(b) creates *concurrent but presumptively tribal* jurisdiction which requires the State to transfer jurisdiction unless good cause exists otherwise or the tribe declines. *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 35, 109 S.Ct. 1597, 1601, 104 L.Ed.2d 29 (1989); *In re Adoption of S.S. & R.S.,* 167 Ill.2d 250, 212 Ill.Dec. 590, 657 N.E.2d 935, 940 (Ill.1995); *In re the Adoption of Halloway,* 732 P.2d 962, 967 (Utah 1986); *In re Maricopa County Juvenile Action,* 171 Ariz. 104, 828 P.2d 1245, 1247 (Ct.App.1983). Thus, Section 1911(b), when applicable, allows state courts to apply a modified, limited version of *forum non conveniens,* while Section 1911(a), when applicable, completely divests the state

---

**6.** For a period of time, it was unknown whether the children came within the FICWA. The questions were resolved when paternity was established. *See* 25 U.S.C. § 1903(4) and (9).

**7.** When the child's residence or domicile is within the Tribe's reservation, Section 1911(a) vests exclusive jurisdiction with a Tribe over "any child custody proceeding." That term includes foster care and temporary removal of the child from the parents. 25 U.S.C. § 1903(1). Section 1911(b) provides for a transfer of matters involving Indian children from state court to tribal jurisdiction whenever the child is not domiciled or residing within the Tribe's reservation in matters involving "foster care placement" or "termination of parental rights." However, in the case of a transfer the tribal court may decline to exercise jurisdiction.

Thus, the "heart" of the FICWA is the jurisdictional provision. Section 1911 establishes a dual jurisdictional scheme. *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 35, 109 S.Ct. 1597, 1601, 104 L.Ed.2d 29 (1989). If the child resides or is domiciled on a "reservation" *exclusive* jurisdiction rests with the Tribe under Section 1911(a). The United States Supreme Court said that, "[I]n enacting the ICWA Congress confirmed that, in child custody proceedings involving Indian children domiciled on the reservation, tribal jurisdiction was exclusive as to the States" and "[M]ore specifically, its (the Act) purpose was, in part, to make clear that in certain situations the state courts did not have jurisdiction over child custody proceedings." *Id.,* 490 U.S. at 41, 44, 109 S.Ct. at 1604, 1606.

courts of jurisdiction. *R.B. v. State Dept. of Human Resources*, 669 So.2d 187, 189 (Ala. Civ.App.1995). Guidelines are provided by the United States Bureau of Indian Affairs (Guidelines).[8]

■ ¶ 23 The first issue then is: What gauge must be employed to establish good cause and is one criterion a child's best interests? This Court holds that the Guidelines, a child's best interests, and the circumstances developed on a case by case basis are all relevant to the determination of whether good cause exists to deny transfer to a tribal court.

¶ 24 The next issue asks: What procedure must be used in order to examine the good cause requirement? This Court holds that the party requesting a transfer must make a timely application for the transfer. The application must state the facts upon which it is based. While affidavits and counter-affidavits may be employed, the trial court is directed to use oral testimony, including those from tribal experts on Indian culture, especially on matters concerning the child's best interests as an Indian child.

¶ 25 The final issue is: Have those parties opposing transfer here met the burden to show cause why the case should not be transferred? This Court holds that the burden has not been met.

### Elements of Good Cause— Child's Best Interests

■ ¶ 26 The courts are split on the question of whether a child's best interests is a factor to consider in resolving the question of whether good cause exists to transfer a cause to a tribal court under Section 1911(b).[9] Good cause is not defined in the FICWA. *See In re N.L.*, 1988 OK 39, 754 P.2d 863, Opala concurring in part and dissenting in part, 1988 OK at ¶¶ 27–29, 754 P.2d at 876–77. The Guidelines are not binding but indicate what the Bureau of Indian Affairs be-

lieves necessary in the proper application of FICWA. *Id.*, Opala concurring in part and dissenting in part, at ¶ 29, 754 P.2d at 876–77. The Guidelines do not directly answer the question of whether the child's personal best interests are an element of good cause in consideration of a transfer to a Tribal Court, and if so, what evidence of personal best interests will support a good cause finding.

¶ 27 Some courts find that the child's best interests are integral to decision-making involving children so that such interest must be an element for consideration at every stage of the proceeding. *In re Guardianship of J.O.*, 327 N.J.Super. 304, 743 A.2d 341, 348–49 (N.J.Super.App.Div.2000). The Court in the case of *In re Maricopa County Juvenile Action No. JS–8287*, 171 Ariz. 104, 828 P.2d 1245, 1250–52 (Ct.App.1991), ruled that a child's best interest was a factor, along with the Guidelines. There the Court found from the evidence that the child had bonded with foster parents and had a stable environment, but the proposed transfer was to an out-of-state Tribal Court. The site of the Tribal Court and other aspects of the Guidelines were examined and factored into the decision to deny transfer. Similarly, the Nebraska Supreme Court rejected a transfer partly based upon the Guidelines and because transfer was not in the best interests of the children as shown by the evidence presented. *In re Interest of C.W., M.W., K.W. and J.W.*, 239 Neb. 817, 479 N.W.2d 105, 117–18 (1992).

¶ 28 Other courts simply state that a child's best interest is a factor without elaboration, but in all of these cases additional factors and the Guidelines were also present. *In re M.E.M.*, 195 Mont. 329, 635 P.2d 1313, 1317 (1981) and *In re Robert T.*, 200 Cal. App.3d 657, 667, 246 Cal.Rptr. 168, 174–75 (1988), provide examples. In the case of *In re of M.E.M.*, the Court directed that best interests of the child, in addition to the Guidelines, be considered on remand.[10]

---

8. 44 Fed.Reg. 67584, 67591 (Nov. 26, 1979). The Guidelines do not mention best interests of the child as a factor to consider on the question of Section 1911(b) transfers.

9. See Michael J. Dale, *State Court Jurisdiction Under the Indian Child Welfare Act and the Unstated Best Interest of the Child Test*, 27 Gonz. L.Rev. 353, 387 (1991–92). In contrast, transfer

under Section 1911(a) is mandatory because exclusive jurisdiction there rests with the Tribal Court. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29.

10. Implicit in this directive is the conclusion that the best interests criterion is not included as one of the Guidelines.

¶ 29 The Oklahoma Supreme Court has stated that best interest of the child is a factor, citing *In re M.E.M. In re N.L.,* 1988 OK 39, ¶ 27, 754 P.2d 863, 869. However, other factors were present and considered. The Court cited *In re M.E.M.* and stated that a child's best interests may prevent transfer to the Tribal Court. The Court noted that the Trial Court had found that the child had roots in the county and that the state court was working toward reunification with the mother. Neither of those circumstances have been shown to exist here.

¶ 30 A number of courts decline to consider best interests as a factor in the transfer inquiry. A case in point is *Yavapai–Apache Tribe v. Mejia,* 906 S.W.2d 152 (Tex.Ct.App. 1995). There the Court declined to use a best interest test on transfer questions because (1) the test defeats the purpose of the FICWA by interjecting Anglo-cultural biases into the analysis; and (2) best interests questions are pertinent to placement decisions and not to jurisdiction decisions. The Court in *In re Armell,* 194 Ill.App.3d 31, 141 Ill. Dec. 14, 550 N.E.2d 1060, 1064–66 (1990), added the fact that BIA Guidelines did not mention best interests and were partly inconsistent with a best interests application.[11] The Missouri Court of Appeals agreed with *Armell* and determined that a modified *forum non conveniens* analysis was the standard to apply. *In re C.E.H., T.W., and M.L.W. v. L.M.W. and R.H.,* 837 S.W.2d 947, 953 (Mo.App.1992); *see also In re N.L.,* Opala concurring in part and dissenting in part, 1988 OK 39 at ¶ 28, 754 P.2d at 876, discussing modified *forum non conveniens.*

¶ 31 The Nation argues here that the primary consideration for the denial of transfer in the decision of *In re N.L.* was the *forum non conveniens* aspect of that case. While this may be true, nevertheless the Supreme Court's expression about best interests aligns it with the best interests line of cases and is thus controlling here. Therefore, this Court holds that, under the authority of *In re N.L.,* a child's best interests is a factor to consider on the question of transfer to a Tribal Court under Section 1911(b).

¶ 32 However, the conclusion that a child's best interests is a factor in deciding whether to transfer under Section 1911(b) does not fully resolve this case. It is necessary to examine what is meant by best interests and to decide what process should be used to determine best interests.

### Best Interests—The Concept and Its Determination

¶ 33 Good cause must be viewed in two contexts—good cause that is personal to the children, and good cause that is extrapersonal.[12]

¶ 34 The former pertains to the nurture, care, and welfare of the children **and,** when Indian children are involved, exposure to and cultivation of the social and cultural aspects of Indian life, their Indian culture, and Indian heritage.[13]

> The best interest of the child test in the Anglo–American legal systems considers a number of factors: (1) the desires of the child; (2) the emotional and physical need of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that

---

**11.** The case of *In re Adoption of T.R.M.,* 525 N.E.2d 298, 307–08 (Ind.1988) reached a contrary result. There, the Court read the FICWA and the BIA Guidelines to mean that best interests of the child were a part of the Congressional policy and were valid considerations in determining good cause under Section 1911(b). In contrast, the case of *People in Interest of J.L.P., S.D.P., W.J.P., and C.P.,* 870 P.2d 1252, 1257–59 (Colo.Ct.App.1994), found significance in the failure of the FICWA and the Guidelines to mention best interests of the child in matters of Section 1911(b) transfers. The Colorado Court concluded that use of a best interests standard at the transfer stage would defeat the purposes of the FICWA.

**12.** The Guidelines *exclude* from consideration socio-economic conditions and perceived adequacy of the tribal judicial system or social services structure. Guidelines, § C.3(c), 44 Fed.Reg. at 67591. Also, the children here are younger than the ages listed in Section C.3.

**13.** These are also proper concerns when a final decision is made concerning the children.

the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Yavapai–Apache Tribe v. Mejia,* 906 S.W.2d at 168.

¶ 35 The extrapersonal context of best interests refers to the means, resources, and procedures available and used to preserve and protect the personal best interests of the children. Thus, the courts consider this aspect of best interest when they hold that the FICWA, the Guidelines, and modified *forum non conveniens* are the sole standards. Good cause in the context of the FICWA has often been examined in relation to extrapersonal best interest matters. For example, in *In re Wayne R.N.,* 107 N.M. 341, 757 P.2d 1333 (N.M.App.1988), the court determination of whether good cause has been shown not to transfer a case will necessarily be made on a case by case basis. *Id.* at 1335. There, the circumstances involved a late request for transfer, a tribal court located in Oklahoma, but with witnesses and parties in New Mexico, availability of tribal representatives to assist the court in New Mexico, and opposition of the Tribe to transfer. Convenience of the forum and lateness of the transfer request were factors serving to justify denial of transfer in *In re Matter of Maricopa County Juvenile Action,* 171 Ariz. 104, 828 P.2d 1245 (App.1991).

¶ 36 Extrapersonal best interests considerations justified denial of transfer in *In re N.L.* The degree to which these considerations did so is reviewed in the concurring Opinion. *Id.,* Opala concurring in part and dissenting in part, 1988 OK 39 at ¶ 31, 754 P.2d at 877. However, in the main Opinion the Court cited *M.E.M.* and stated that a child's best interest may prevent transfer to the tribal court. The Court further observed that the trial court had found that the child had roots in the county and that the state court was working toward reunification with the mother. Neither of those circumstances have been shown to exist here.

¶ 37 Thus, the Oklahoma Supreme Court in *In re N.L.* examined factors that fall within both categories of best interests. While it appears that the *N.L.* trial court held an evidentiary hearing, the nature and content of the transfer hearing were not matters before the Supreme Court on appeal. Significantly, in the cases dealing with best interests, either an evidentiary hearing was ordered, as in *In re M.E.M.,* or had been conducted with the involvement of experts, as in *In re Interest of C.W., M.W., K.W. and J.W.* Thus, the next matter for consideration is the procedure to determine best interests.

### Best Interests—Its Determination

¶ 38 The trial court's task is to engage in a fact-finding process leading to a determination of the children's best interests, yet keeping in mind the facts that Indian children and an Indian Nation are involved. Thus, while the foregoing components of best interests from *Yavapai–Apache Tribe v. Mejia* are not exhaustive, the list, in conjunction with the Indian aspects of the case *and the need to view the case from a different perspective,* do indicate a number of relevant considerations. However, when the best interests standard is used, care must be taken to avoid a purely Anglo–American point of view.[14] In addition, the best interests inquiry should be consistent with the best interest inquiry on final placement.[15]

---

14. Whether the "Anglo" best interest of the child test should be an element of the good cause test has been questioned. Michael J. Dale, *State Court Jurisdiction Under the Indian Child Welfare Act and the Unstated Best Interest of the Child Test,* 27 Gonz. L.Rev. 353, 387 (1991–92). The Court in *Yavapai–Apache Tribe v. Mejia* found that the FICWA is silent on the issue and that the Guidelines suggest the best interest of the child has no place in determining good cause to the extent that its consideration in determining good cause would constitute an abuse of discretion, but that best interest is appropriate in placement.

15. The trial court and the parties should also be cognizant of the "qualified expert witness" requirements of 25 U.S.C. § 1912(f). The qualified expert testimony diminishes the risk of cultural bias. *In re N.L.,* 1988 OK at ¶ 17, 754 P.2d at 867. For a review of the guidelines for qualification of an expert see *In re N.L.,* 1988 OK at ¶¶ 14–24, 754 P.2d at 866–68. It has been held that such expertise includes a person with special skills and knowledge of the social and cultural aspect of Indian life. *State v. Woodruff,* 108 Or.App. 352, 816 P.2d 623, 626 (1991); *State v. Charles,* 70 Or.App. 10, 688 P.2d 1354 (1984). A review of the *Charles* decision's holding on this point was dismissed because of the correctness of a separate holding. *Charles v. State,* 299 Or. 341, 701 P.2d 1052 (1985). *See also In re Welfare of T.J.J. & G.L.J.,* 366 N.W.2d 651 (Minn.

¶ 39 Moreover, the good cause exception in the FICWA offers the state courts an opportunity to apply a modified doctrine of *forum non conveniens.* The rule of *forum non conveniens* is an equitable one embracing the discretionary power of a court to decline to exercise jurisdiction it has over a transitory cause of action, when it believes that such action may be more appropriately and justly tried elsewhere.[16] *St. Louis–San Francisco Ry. Co. v. Superior Court, Creek County,* 1954 OK 223, 276 P.2d 773. In matters of equity, the evidence must reasonably support the findings of the trial court. *Boughan v. Herington,* 1970 OK 125, ¶ 11, 472 P.2d 434, 436.

¶ 40 In general, the power of transfer under the rule is discretionary. However, the transfer should only be exercised in exceptional circumstances and when an adequate showing has been made that the interests of justice require a trial in a more convenient forum. *Groendyke Transport, Inc. v. Cook,* 1979 OK 59, ¶ 7, 594 P.2d 369, 372. The FICWA *modifies* the rule by *reversing* the preferred outcome from retention to transfer, but the standard of proof has not been modified.

¶ 41 In order to bring the matter of transfer before the court, a party must apply for a transfer.[17] Affidavits and counter affidavits may be accepted to prove traditional *forum non conveniens* facts, but the trial court is encouraged to hear oral testimony. *Gulf Oil Company v. Woodson,* 1972 OK 164, ¶ 22, 505 P.2d 484, 490. The application must state the facts on which it is based and not mere conclusions. *Id.* Likewise, the party opposing transfer must set forth, in writing, the factual basis for opposing the transfer. Guidelines, 44 Fed.Reg. at 67590. Oral testimony is required when the request goes beyond the extrapersonal considerations of

geography, witness location, and the like, and delves into the child's best personal interests.[18] *See also In re N.L.,* Opala concurring in part and dissenting in part, 1988 OK 39 at ¶ 29, 754 P.2d at 877, stating that an adversary hearing is required.

¶ 42 Once the matter is before the court, the party opposing the transfer has the burden of establishing good cause not to transfer the matter. *In re Interest of C.W., M.W., K.W. and J.W.,* 479 N.W.2d at 112; Guidelines, 44 Fed.Reg. at 67591–92 § C.3(d) and C.3 Commentary. That party's burden must also overcome the fact that the FICWA creates a broad preference for tribal jurisdiction. *In re Maricopa County Juvenile Action No. JS–8287,* 828 P.2d at 1248; *see Yavapai–Apache Tribe v. Mejia,* 906 S.W.2d at 170.

¶ 43 The FICWA establishes burdens of proof for some determinations under the Act, however, Section 1911(b) does not specify the degree of proof necessary to establish good cause not to transfer a case to tribal court. Similarly, the Guidelines do not provide an answer. By comparison, an order effecting a foster care placement requires evidence of a clear and convincing quality that continued parental custody will be harmful and the "beyond a reasonable doubt" burden applies to termination orders. 25 U.S.C. §§ 1912(e), 1912(f).

¶ 44 The Montana Court in *In re M.E.M.,* 635 P.2d at 1317, applied the "clear and convincing" standard. Clear and convincing evidence is defined as a degree of proof that produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established. *In re M.B.,* 2000 OK CIV APP 56, 6 P.3d 1072.

App.1985), where the Court found the experts to be qualified who possessed training in Indian culture.

**16.** As ruled above, the child's best interests is a factor in the decision-making process in addition to such considerations as geography, convenience of witnesses, and location of evidence.

**17.** The Guidelines speak of a petition. Guidelines, 44 Fed.Reg. at 67590–91. Oklahoma requests to change venue are presented by applica-

tion. *12 O.S.1991, 140.* The Oklahoma Supreme Court has also used the terms petition and motion when referring to the means to raise the issue. *Gulf Oil Company v. Woodson,* 1972 OK 164, ¶ 23, 505 P.2d 484, 490. Here, the parties' filings fully complied with procedural requirements.

**18.** As noted herein, in other cases where a child's best interests was considered an appropriate factor, the proceedings involved an evidentiary hearing and expert testimony.

¶ 45 Although the Oklahoma Supreme Court did not refer to this standard in the main Opinion of *In re N.L.*, the concurring Opinion did so.[19] *In re N.L.*, Opala concurring in part and dissenting in part, 1988 OK 39 at ¶ 30, 754 P.2d at 877, citing, as does the main Opinion, In re M.E.M. On the other hand, when examining *forum non conveniens* questions, the Oklahoma Supreme Court has ruled that the issue is addressed to the broad equity powers of the trial court. *Gulf Oil Company v. Woodson,* 1972 OK at ¶ 23, 505 P.2d at 490.

¶ 46 This Court holds that, in the specific context of Section 1911(b) transfers, the party opposing the transfer must establish good cause according to the "clear and convincing" evidence standard. This holding is consistent with the Supreme Court's reliance on the Montana Court and the language of the concurring Opinion of *In re N.L.* Second, this holding is consistent with the standard of proof applicable to subsequent stages where clear and convincing or even the "beyond a reasonable doubt" standards apply. Next, use of the clear and convincing standard will foster the policy of the FICWA to prefer the Tribal Court and will assist with the effort to avoid inadvertent interjection of cultural bias into the proceeding. Last, in the cases where good cause was found to exist, the reported evidence justified findings of facts on the basis of the "clear and convincing" standard. The Nebraska trial court considered expert testimony on the best interests question. *In re Interest of C.W., M.W., K.W. and J.W.*, 479 N.W.2d at 117–18. The evidence clearly supported the outcome in those cases analyzing the facts pertaining to extrapersonal matters such as witness location, distance away of Tribal Court, and timeliness of the petition to transfer. *See, for example, In re Wayne R.N.*, 107 N.M. 341, 757 P.2d 1333 (N.M.App.1988).

¶ 47 Here, the Probate Division trial court was presented with briefs and argument. Neither side of the issue at the trial level presented formal evidence. Affidavits attached to the briefs presented by the Nation and Foster Parents raised a question about Foster Parents' commitment to the Indian heritage of the children and their relationship with their half-sibling. The Probate Division trial court focused upon the concept of bonding between children and the Foster Parents. Significantly, the record here shows that during the Deprived Child placement proceedings the Nation **and** DHS emphasized the positive effects of having a sibling relationship as partial justification for placement with the adoptive parents of the children's half-sibling.[20] No party presented evidence concerning Indian life, culture, heritage, and the relationship of those factors to the best interests of the children.[21] In sum, the record here does not fully explore and analyze the total circumstances and factors comprising the personal best interests of S.W. and C.S. such that a finding based on the existing record was or could be made, which is supported by clear and convincing evidence, that the personal best interests of these children are served by denying transfer to the tribal court.

19. The California Court applied a substantial evidence test to the transfer issue. *In re Robert T.*, 200 Cal.App.3d at 667, 246 Cal.Rptr. at 173. In a different context, the Oklahoma Supreme Court defined "substantial evidence:"

 The term "substantial evidence" means something more than a scintilla of evidence. It means evidence that possesses something of substance and of relevant consequences such as carries with it fitness to induce conviction, and is such evidence that a reasonable man may fairly differ as to whether it establishes a case.

*Hayes Motor Freight, Inc. v. Manning,* 1980 OK 71, ¶ 6, 611 P.2d 241, 243.

20. DHS Permanent Planning Recommendation, Matter of S.W. Court record at 64, Matter of C.S. Court record at 112.

21. It may be quickly seen that the jurisdictional inquiry evolves into a hearing with characteristics of a final placement examination once best interests of the child is injected into the jurisdictional inquiry. However, this Court does not have the authority to decide whether to recede from use of best interests of the child at this transfer request stage in light of *In re N.L. See In re Armell*, 194 Ill.App.3d 31, 141 Ill.Dec. 14, 550 N.E.2d at 1064–66 (1990), where the Court determined that best interests are "relevant not to determine jurisdiction but to ascertain placement" and, for the contrary result, *In re Guardianship of J.O.*, 743 A.2d at 348–49, "the best interests of the child test is the backbone of American family law." But see also note n. 14 above.

### Alternative Reasons to Deny Transfer

¶ 48 The trial court's order assigned two other reasons for denial of the transfer.[22] The first is that the petition to transfer was not timely. Promptness is a recognized requirement for a transfer request. Guidelines, 44 Fed.Reg. § C.1 and C.1 Commentary at 67590. An untimely request asserting *forum non conveniens* will not succeed under Oklahoma law. *Gulf Oil Company v. Woodson*, 1972 OK at ¶ 23, 505 P.2d at 490.

¶ 49 Here, the record reflects that uncertainty existed for a substantial period regarding the paternity of the children. Because paternity in this case as to both children established whether they were of Indian descent, such fact needed to be known before transfer would have been authorized. Thus, under the circumstances it cannot be said that the transfer requests· are untimely.[23]

¶ 50 However, the timing of the transfer petition and the adoption petition raise questions. The children had been placed by DHS with the Foster Parents in January 2000, as a part of the Deprived Children cases. After the Nation became involved, it began to take the position that the children should be placed with the adoptive parents of the children's half-sibling. As late· as October 19, 2000, the plan, supported by the Nation and DHS, was leading to eventual adoption of both children by their half-sibling's adoptive parents.

¶ 51 Statements in sundry filings ˙in these matters indicate an undercurrent of dispute between the Nation and Foster Parents. In any ˌevent, the adoption petition was filed October 6, 2000, and the transfer request was filed October 19, 2000. The Nation's affidavits supporting its brief on the transfer issue mention a confrontation involving the Foster Parents and an allegation that they would deprive the children of their Cherokee culture and history. An expert's affidavit submitted on behalf of Foster Parents states that they honor the children's heritage and "will work with the tribe to help the children incorporate their genetic and cultural birthright." However, no personal statement from the Foster Parents appears in the record.

¶ 52 This Court is concerned whether the jurisdictional squabble, as here presented, has as its basis the children's best interests and how those interests may be served versus whether the system is being manipulated for purposes of obtaining leverage. Thus, the parties' motivations are concerns when determining what the best interests of these children may be here.

¶ 53 This Court's concern is heightened because DHS has reversed itself. The concern is not that DHS has reversed its legal arguments, but rather that DHS has now abandoned its support of sibling relationship in favor of foster parent bonding relationship, all without apparent regard for the fact that it is Indian children that are involved here and the implications and policies flowing from that heritage.

¶ 54 Therefore, among the matters for investigation and consideration on remand are the possible motivations of the parties and the interaction and conflicts here between bonding and sibling relationships. Under the circumstances, those factors, along with the other components of best interests as noted herein, must be examined in the determination of whether good cause exists to deny transfer and whether the opponents of transfer have met their burden of evidence.

¶ 55 The inconvenient forum factor here appears to relate to geography. The Guidelines refer to undue hardship to the parties

---

**22.** The trial court's oral ruling was the best interests of the children, stated in terms of their personal best interests, was the basis of the denial of transfer. Hearing Transcript, Nov. 3, 2000, p. 56.

**23.** The birth certificate father, Steve W., a non-Indian, was adjudicated to be S.W.'s father by administrative court order on September 8, 1999. K.S. did not acknowledge paternity in Court of S.W. until after DNA results were obtained. The record fails to show a correction to the birth certificate of S.W. to reflect the correct paternity of S.W. *See* subsection Parties & Proceedings, S.W. p. 4. This birth certificate should be corrected to remove the administrative court adjudicated father, Steve W., from the birth certificate and place the ˙DNA father, K.S., on the certificate to officially recognize the child's Indian heritage and avoid appearance of duplicate fathers, each of whom is decreed or acknowledged by a court proceeding to be S.W.'s father.

and to the witnesses. Guidelines, 44 Fed. Reg. § C.3(b)(iii) at 67591. Here, pertinent information, witnesses, and parties can be found in a number of counties. Distance is not an overwhelming factor and the Nation has the capability of holding court nearer to Tulsa County where the Foster Parents reside. It cannot be said that clear and convincing evidence supports denial of transfer on this ground.

## SUMMARY AND CONCLUSION

¶ 56 This case must be remanded to the trial court to conduct an adversarial hearing. In this hearing, the children's best interests is a factor to consider on the issue of transfer to the Tribal Court. The trial court must determine just what the best interests are for the children, consistent however with this Opinion and the fact that these are Indian children. Care must be taken not to inadvertently interject cultural bias into the proceedings. Relevant parts of the Guidelines are to be addressed, so hardship on the parties is a factor to consider, however, this Court has ruled that the transfer request was timely.

¶ 57 Therefore, the decision of the Probate Division trial court which consolidated the Deprived Child cases and the Adoption Case before a single District Court judge, but which retained the respective procedures for each case, is affirmed. The decision which denied transfer of the proceedings to the Tribal Court is reversed and the case is remanded for further proceeding consistent with this Opinion.

¶ 58 AFFIRMED IN PART AND REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

¶ 59 STUBBLEFIELD, P.J., concurs, and TAYLOR, J., concurs in part and dissents in part.

TAYLOR, J., concurring in part and dissenting in part.

¶ 1 I concur with the majority's decision to reverse the trial court's order denying transfer of the proceedings to the tribal court. However, I would reverse and remand with instructions for the trial court to sustain the Cherokee Nation's petition to transfer the case to the tribal court because the Appellees failed to show the existence of any good cause to deny the petition for transfer. 25 U.S.C. § 1911(b).

¶ 2 It also appears that placement preferences and other requirements of the Indian Child Welfare Act, 25 U.S.C. § 1901 through § 1963, have not been followed.

¶ 3 This case can be adequately presented in the tribal court without any undue hardship to the parties or witnesses.